J. F. LITTLE v. CAROLINA CENTRAL RAILROAD CO.

*Negligence and Contributory Negligence — Duty of Engineer.*

1. While an engineer is required to solve all reasonable doubts in favor of saving life, he is not required to provide against what he has no reasonable ground to anticipate. The legal obligation is to take proper precaution to guard against what is the usual or justly expected consequence of one's acts—not against unexpected, unusual or extraordinary results.

2. One who attempts to walk across an elevated trestle, so high as to make it dangerous to jump to the ground, is negligent, and if injured by a train while crossing, the jury should find that his injuries were the result of his contributory negligence.

3. Where an engineer, seeing a person on a high trestle, reduced the speed of the train, but, upon such person's getting off of the track and into a place which he had seen others occupy with safety while trains passed, the engineer increased the speed of the train, it is error to refuse to call the attention of the jury to the question whether the position occupied by such person had proven a place of safety for others, and whether the engineer desisted from his efforts to stop the train because he reasonably supposed there was no longer any danger of causing an injury.

CIVIL ACTION, tried before *Bryan, J.*, and a jury, at January Term, 1896, Superior Court of UNION County. The Court submitted the following issues : " 1. Was the plaintiff injured by the negligence of the defendant ? 2. Did the plaintiff contribute to his injury by his own negligence ? 3. Notwithstanding the negligence of the plaintiff, could the defendant have avoided the injury to the plaintiff by the exercise of ordinary care ? "

The plaintiff testified in his own behalf as follows : " On January 19, 1894, came to Monroe and walked

home on railroad track, one and a half miles this side Beaver Dam. I was going down track to cross trestle; looked back and saw no train. I could see back three-quarters mile. As I got near middle of trestle saw some hands. I heard them holler and saw them motion their hands. I looked back and saw train coming about fifty yards from me—may be one hundred yards. I was very near midway. I made for the side, took seat on cap-sill, squatted down and put my arms around guard rail. I had not heard it blow; can hear it blow two miles in still weather. It was very still day. Train passed by and struck me on head. It made a wound four inches long; scraped the skull; a little hole up in head. No way to get off unless I jumped off. Trestle forty or fifty feet high. It didn't stop. If it slacked up I could not tell it. It frightened me pretty badly when I saw train coming. I was hurt pretty badly; could walk; had pain in head twelve months constantly; occasionally. It gave me head-ache every time I rode horseback or did any jarring work. I couldn't hear as well as I did before; could not hear well then.

Cross-examined: "I got on track between rails at Monroe; when I got to the trestle I looked back. I can read; saw printed notice on board notifying persons not to go on trestle. I was scared bad. The place I got on was about one and a half feet from end of cross-ties. I had just time to get on. I think it was front part of train that struck me. It was a short train. If I had thrown my head back I would not have been hit. Not certain about the distance the train was from me when I first saw it. I was facing track; might have been looking towards Monroe. I couldn't work for about two months. I had had headache before. Dr. Ashcraft treated me; he said I could get a doctor if necessary. I had Drs. Green and

118—68

Dees. Have paid Dr. Dees two dollars; nothing to Dr. Green."

Re-direct: "I don't know how much I owe Dr. Green. Ashcraft had nothing to do after I went to Green and Dees. After I squatted it was about one-quarter minute before train struck me. If the train had blown when I could have first seen it I could have got off."

B. M. Medlin, for plaintiff, testified: "Live one-half mile from trestle. It is not under one hundred yards long; between fifty and sixty feet high. I passed it every month; sometimes walked over; at that time no other crossing; many people crossed there; foot log washed away. Cap-sill stuck out nearly two feet from track. A man could swing down. Cross-ties six or eight inches apart; a man can be seen on trestle one thousand one hundred and fifty yards; two sign-boards—one at each end of trestle. I measured the rails. There are one hundred and fifteen rails, thirty feet each."

Cross-examined: "The sign-boards are twelve or fifteen feet from end of trestle. One could tell that a person was between the sign-boards. Have seen train pass when hands at work on trestle. Don't know that I ever saw any of the hands get on cap-sill. From cap-sill to top of rail about two feet; from end of cross-tie to cap-sill eighteen inches or two feet. A man by squatting down on cap-sill looks like might be safe, but I don't know."

Re-direct: "At one thousand one hundred yards I can tell that a boy was on trestle, coming towards me."

J. F. Little re-called: "I was in between the rails when I saw the train."

I. C. Neimyer, in behalf of defendant, testified: "I recollect the occurrence. I was the engineer. Three-quarters mile from curve to trestle. I saw somebody on the track; could not tell which part, whether on trestle or not.

Between one-quarter and one-half mile saw man on trestle; he walked from middle of track on trestle and stepped off on to cap-sill. I applied brakes to reduce speed for trestle, which was twenty miles an hour. I saw then that he was out of my way. If I had retained my brake I would have stopped if he had been in my way. I relieved the brake, seeing he was out of my way, which brought me to fifteen or twenty miles per hour. I knew the bridgemen were working on trestle. I pass them almost daily on cap-sill. I looked out; had my head out of cab window. Engine did not strike him. I went on. I thought he was one of the men working on the trestle. Men at work on trestle generally get out on cap-sill when train passes. They are perfectly safe. I do not know plaintiff. He was looking towards me when I passed. He was between one-quarter and one-half mile from me when I saw him going to cap-sill. I was not required to blow for that trestle. I did not blow."

Cross-examined: " I gave no notice of approaching trestle. I did not think it was necessary to blow. I did not know who the man was. He did not act to me like he was scared. I would have stopped if he had not been out of my way. I was about one hundred yards from trestle when I saw he was on cap-sill, out of my way. He was on right hand from me when he got off. If I had known I hit him I would have stopped. I don't know whether it was Little or not."

Re-direct: " I told Mr. Moncure that the man was not struck by engine."

*Messrs. MacRae & Day*, for appellant.
*Mr. F. I. Osborne*, for appellee.

AVERY, J. (after stating the case): It was conceded and settled in *Clark* v. *Railroad*, 109 N. C., 430, that one who

attempts to walk across an elevated trestle, so high that it is dangerous to jump from it to the ground, is negligent, and that where he is injured by a train while crossing, it is the duty of a jury to find, in response to an issue involving the question, that he contributed by his own carelessness to cause the injury. *Pickett* v. *Railroad*, 117 N. C., 616; *Baker* v. *Railroad*, decided at this Term. In the case at bar, as in *Clark* v. *Railroad*, *supra*, the only question presented is, whether there was any intervening negligence on the part of the defendant, or, in other words, whether, notwithstanding the admitted carelessness of the plaintiff, the defendant's engineer, after the plaintiff had exposed himself to danger, might have averted the accident by the exercise of ordinary care. The engineer saw the plaintiff on the trestle in time to have stopped the train without peril to those on board, and to have avoided the accident. For this reason the court instructed the jury to respond in the affirmative to the third as well as to the second issue.

But the plaintiff testifies that when he looked back and saw the train approaching, he, in obedience to a signal from a railroad hand, moved to one side, sat down upon a cap-sill and put his arms around a guard-rail. The plaintiff further testified that the passing train struck him in the forehead and inflicted a painful wound, but admitted that if he had held back his head, he would have escaped uninjured.

The engineer testified that he saw that the plaintiff was on the trestle when his train was between a quarter and a half mile from him, and on perceiving his situation, immediately applied brakes, and could and would have stopped the train before reaching the point where plaintiff then was, if he had not seen the plaintiff step upon the cap-sill. The engineer says that he was running at the rate of

twenty miles an hour, and by applying the brakes reduced the speed on seeing that Little was on the trestle, but when the latter took refuge upon the cap-sill he relieved the brakes and made no further efforts to stop. The engine passed Little, according to the engineer's account, without injuring him. He was seen by and was looking at the engineer as the engine passed him. As a reason for relieving brakes when Little was seen to step on the cap-sill, the engineer testifies that the train hands were at the time working on the trestle, and were in the habit of moving out on the cap-sill when a train approached, as they could thereby easily avoid collision. The cap-sills projected a foot and a half.

The defendant asked the court to instruct the jury in substance that if the engineer had seen that others who had taken refuge from passing trains on the cap-sills had escaped unhurt, and if, acting upon the reasonable belief that the plaintiff was in a place of safety, he relieved the brakes when he would, but for such belief, have stopped the train before reaching the point on the trestle where the plaintiff was stricken, they should answer the third issue in the negative. There was error in refusing to submit this proposition to the jury. It was the duty of the engineer to stop the train if it appeared to him that the natural and probable consequence of relieving the brakes and allowing the train to continue its course would be injurious to the plaintiff. While an engineer is required, when placed in such a situation as was Neimyer, according to his testimony and that of other witnesses, to resolve all reasonable doubts in favor of saving life, (*Clark* v. *Railroad supra*,) that rule does not impose upon him the duty of providing against what he has no reasonable ground to believe would happen. The legal obligation is to take proper precaution to guard against what is the

usual or justly expected consequence of one's acts—not against unexpected, unusual or extraordinary results. *Tillett* v. *Railroad*, at this Term; *Blue* v. *Railroad*, 116 N. C., 955; *Emry* v. *Railroad*, 102 N. C., 209; *Russell* v. *Monroe*, 116 N. C., 720; *Thompson* v. *Winston*, decided at this Term.

The court ought to have called the attention of the jury to the question whether the cap-sill had proven a safe place of refuge for others, and whether the engineer desisted from the effort to stop the train in time to prevent a collision because he entertained the reasonable belief that the plaintiff was no longer in danger. In refusing the instruction that would have presented this view of the evidence there was error which entitles the defendant to a new trial.

New Trial.