# Hamilton *v.* Birmingham Ry. L. & P. Co.

### Injuries in Collision.

#### (Decided January 11, 1917.   73 South. 950.)

1. **Street Railways; Collisions; Contributory Negligence.**—The evidence in this case stated and held to show such contributory negligence on the part of the driver of the motorcycle as to preclude a recovery for the injuries so sustained in collision with the street car.

2. **Negligence; Presumption; Res Ipsa Loquiter.**—While there are cases to which the doctrine of res ipsa loquiter applies, negligence is not generally presumed from the fact of injury or damage.

3. **Street Railways; Speed.**—Assuming that twenty-five miles per hour was a negligent rate of speed for a street car a motorcycle rider whose machine the car cleared, but which was struck by a trailer, could not recover since he and not the car must have brought about the collision.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by J. W. Hamilton against the Birmingham, Railway, Light & Power Company for damages for injuries received in collision with one of its cars. Judgment for the defendant and motion for new trial overruled and plaintiff appeals. Affirmed.

HARSH, HARSH & HARSH and BURGIN & BROWN, for appellant. TILLMAN, BRADLEY & MORROW and L. T. LEADBEATTER, for appellee.

MAYFIELD, J.—The action is by appellant to recover damages as for personal injuries suffered by him in consequence of a collision between a motorcycle, ridden and driven by him, and a street car operated by appellee. The complaint contained a count or counts, declaring on original negligence, subsequent negligence, and wantonness. There were pleas of contributory negligence. There is some confusion in the record touching which counts the pleas of contributory negligence were allowed to, and which counts the plea of the general issue only was allowed to; but there is no assignment of error as to any ruling on the pleadings. The trial court gave the affirmative charge for the defendant as to the counts declaring on subsequent negligence and wantonness, and the jury found for the defendant on the count de-

claring on initial negligence. The plaintiff moved the court to set aside the verdict and award a new trial, which motion the trial court overruled. Plaintiff assigns many errors as to instructions given at the request of defendant, and assigns error, also, as to the overruling of his motion for a new trial.

The following facts were shown without dispute: Plaintiff was in the saddle of a motorcycle, Mr. Neill riding behind him, when a collision occurred between a street car operated by defendant company, approaching from behind on Third avenue between Eighth and Ninth streets, in the city of Birmingham, and plaintiff's motorcycle. The street car line had double tracks on Third avenue. It was 17 feet from the north track to the curb of the street. Both tracks were embedded in the street and were a part thereof. The evidence showed the great frequency of the use of Third avenue between Eighth and Tenth streets, and especially during baseball afternoons. This accident occurred on a baseball afternoon, viz., on the 21st of May, 1914. About the time the street car overtook plaintiff, plaintiff had reached a point where two automobiles were parked on the north side of Third avenue, leaving a space of only about six feet between the street car tracks and the automobiles. It was in this space that the collision occurred.

The plaintiff testified, in part, as follows:

"The trailer of the street car struck me. Up to the time I was struck, the street car had given no signals of its approach. I first knew of its approach when the front end of the motor car passed by me, rushed by me. It was going very rapidly, I thought; in my judgment about 25 miles an hour. I was almost stopped at the time I was struck, possibly running two or three or four miles an hour. I tried to stop my machine when I discovered the street car was approaching. There was an automobile on the right-hand side, leaving a space of about six feet between the automobile and the street car track. I felt a suction from that car, from that train, as the front car passed me; when the suction came, that overbalanced me on the machine."

Jack M. Neill, a witness for plaintiff, who was riding the motorcycle with plaintiff at the time of the injury, testified, in part, as follows:

"It was not any part of the car that the handle bars hit; the car hit the handle bars, the trailer. The motor car got entirely by our machine without touching any part of it, and about the

time that the motor car passed our machine Mr. Hamilton tried to dodge in between some automobiles. I was not driving. It may have been that in trying to dodge in between these automobiles his motorcycle got so close to the trailer that the trailer hit the handle bars; I didn't see it exactly. The motor car got entirely by the morcycle. It may have been the case that just about the time the motorcycle tried to cut in between some automobile and came so close to the street car that the side of the trailer hit the handle bars of the motorcycle; I think that is the way it seemed to me."

J. G. Tidwell, a witness for plaintiff, testified, in part, as follows:

"I was on the Ensley car on or about the 21st day of May, 1914, at the time Mr. Hamilton was hurt. I was on the right-hand side going west when the car was going west. I was on the trailer. I saw the car when it struck Mr. Hamilton's motorcycle. It was either the rear end of the motor car or the front end of the trailer that struck Hamilton's motorcycle; I am not positive which. I don't know the speed of the car at that time. I guess it was going about 15 miles an hour, I would say. I would say it was going about that fast, maybe more; I wouldn't say. It wasn't going what I would call so awful fast, and it wasn't so very slow. The best of my knowledge I would say 15 miles an hour. The motorcycle was going very slow when I saw it first. I only saw it just a second or two before it hit the street car."

There was no material conflict in the evidence. There was some difference as to the speed of the car, and as to whether it was the rear end of the motor car or the front end of the trailer which collided with the motorcycle on which plaintiff was riding. But there was no conflict at all that the front end—and even the middle—of the front street car passed the plaintiff and his motorcycle in safety and without harming him, and that the collision was with the rear end of the front street car, or with the trailer at a point about the middle thereof.

It therefore appears as a physical fact that the motorcycle ran into the street car, or approached so near the street car track as to collide with the trailer, after the motorman had safely passed rider and machine, with the motor car of his train.

There was no evidence whatever to show that the motorman in control of the movement of the street car, or any other agent

[Hamilton v. Birmingham Ry. L. & P. Co.]

or servant of defendant, had any knowledge or notice of the danger or peril of plaintiff, or that any one of them had knowledge or notice of any facts to charge them with cognizance of plaintiff's peril; consequently, there was no evidence to support the count for subsequent negligence. Nor was there any evidence, or any tendency of the evidence, to support the count as for willful or wanton injury; hence the court properly gave the affirmative charge for the defendant as to each of these counts.

(1) We do not mean to say or hold that there was any evidence on the part of the defendant as to original or initial negligence. but, even if such were the case, it clearly and indisputably appears that the plaintiff was guilty of negligence which proximately contributed to his own injury, in that after the motor car, or the front end of it, had passed his motorcycle with safety to him, he drove, or allowed his motorcycle to approach, too near the street cars, thereby causing the collision resulting in his injury. The street car was on a fixed track, of course; it could not approach any nearer the motorcycle than the track would allow, without leaving the track; and there is no evidence that it left its track or rails. The motorcycle could approach the cars after the front end of the forward car had safely passed it and its driver; and it did so approach the cars, or the collision could not have happened. The physical facts exclude any other theory or supposition that would account for the injury. The theory that the suction from the passing street car was sufficient to pull the motorcycle under the moving car is wholly unreasonable, and untenable, being contrary to all experience and the laws of physics. While, of course, there is some suction in that direction, from a moving car, every one knews that from a passing street car, going at the highest estimated speed of 25 miles an hour, it is not sufficient to draw a moving motorcycle, with two men thereon, under the street car. No court or jury would give credence to the testimony of any witness who would venture to testify that the suction from this passing car drew thereunder the plaintiff's motorcycle, without any fault on the part of plaintiff.

(2) Negligence is not generally presumed from the fact of injury or damages. There are exceptions, as cases to which the doctrine of ipsa loquitur applies, or certain cases in which passengers are injured, and probably others; but this is not one of those cases.

(3) There was no evidence in this case to show negligence on the part of the defendant, unless it could be said that the speed of the car was such. There was nothing to show that it was negligence to run a car at the rate of speed here shown—25 miles an hour, according to the highest estimate. Most of the evidence showed the car to be running at the usual speed. While the plaintiff testifies that the car was running very fast, his own evidence, as well as that of others, shows that he was in no position or condition to estimate accurately as to this, as he says he only saw it as it passed him, and he was struck by the rear end of the first coach, or the front or middle of the rear coach. However this may have been, and conceding that there was some evidence of negligence as to the speed of the cars, it is conclusively shown by all the evidence, and the admitted physical facts, that plaintiff's negligence concurred with that of the motorman in producing the injuries complained of. The collission could not have happened unless the motorcycle had gotten nearer the street car and its track after the front end of the car had safely passed it. Neither the motorman of the street car, nor the conductor, could have placed the motor car any nearer the street car or the track, if he had tried so to do. Therefore, if it should be conceded that the agents of the street car company were guilty of any negligence, the negligence of plaintiff, of necessity, was subsequent thereto and, as a physical fact, must have proximately contributed to the injury; and upon this hypothesis there could be no recovery.

There was, as we have said, no tendency of the evidence to show subsequent negligence on the part of the defendant; when the motorman and the front car passed plaintiff there was no danger or peril. Plaintiff, himself, shows this. He says: "I say when the motor car passed me the end of my nearest handle bar was something like two feet from the car; the machine being halfway between the handle bars, would be a foot and a half further away, of course. My other handle bar was about the same distance from this automobile. In passing between the street car and the automobile there was hardly so much as two feet clearance on each side. I believe it was a foot and a half clearance on each side. That was not sufficient clearance for safety in riding a motorcycle in this case. It would be sufficient usually if the objects were standing still. The automobiles were standing still. The fact of the street car moving did not

bring it any nearer to me unless the swaying of the car would bring it nearer. It is a matter of speculation how much a car would sway. I don't know that. It would not sway two feet, I take it."

A case from New York presented a stronger case for the plaintiff than this, and it was therein held that the trial court properly directed a nonsuit. The decision is well stated in the headnotes of that case as follows:

"It is not actionable want of care, in those in charge of horse cars and horses running on a horse railway along the street of a city to fail to prevent a child of tender years, in such street, from approaching unseen by them, the side of the car (after the horses and front part of the car had passed) so to fall under the car and receive injuries from the hind wheel of the car on that side.

"Where the driver, standing on the front platform of such car, keeps a close watch forward, and is vigilant and careful to see and avoid any obstruction on or dangerously near the track in front of him, he is guilty of no negligence in omitting also to keep a constant watch of each side of the car to the rear of the front platform, to see that no one is injured by coming laterally into collission with the side of the car."—*Bulger v. Railway*, 42 N. Y. 459.

In a decision by this court, in a case where there was a collision between a street car and a hose cart, there being pleas of contributory negligence to wanton counts, as in this, and there being shown contributory negligence on the part of the plaintiff, as in this case, this court said: "If it be conceded that the hose wagon had the right of way, it is plain that such right would not excuse or exempt the driver from the duty of exercising due care and prudence in driving his wagon upon or across the railway of the defendant.

"While the complant contained two counts, one upon simple negligence and the other for wanton or willful wrong, the pleas of contributory negligence were pleaded to the entire complaint, and, issue being joined upon them, the case is to be tried upon the pleading as made up by the parties, and, the evidence without conflict sustaining the pleas of contributory negligence, the defendant was entitled to the affirmative charge as requested."— *B. R. & E. Co. v. Baker*, 126 Ala. 135, 140, 28 South. 87, 88.

It seems to us that the physical facts, as related to the law of this case, would prevent a recovery, and that the authority of adjudicated cases would not be necessary to support this conclusion. We will, however, in conclusion, cite a few others, and the holdings, which appear to us to be conclusive authority.

In the case of *Schneider v. Mobile Light & R. Co.*, 146 Ala. 344, 40 South. 761, another case where the plaintiff was injured after the motorman and the front part of the car had passed plaintiff with safety, this court said: "From the evidence in the case these facts are undisputably established: The motorman discovered the buggy proceeding along the track ahead of his car and gave warning of his approach; that the deceased and the driver of the vehicle heard the warning and saw the car approaching in ample time for the buggy to be turned aside from the track and it was turned aside, and it and the driver who remained in the buggy were untouched and unharmed by the car; that as the buggy cleared the track the deceased either jumped or fell from the buggy and was run over by the car. The law does not impose upon a motorman the duty of providing against what he has no reasonable ground to believe will happen. 'The legal obligation is to take proper precaution to guard against what is the usual or justly expected consequence of one's acts, not against unexpected, unusual, or extraordinary results.' It would seem, then, from the undisputed facts, that, notwithstanding the proof is not very clear as to the rate at which the car was running, the motorman was guilty of no negligence with respect to the occupants of the vehicle; for this warning was noted and the vehicle cleared the track at least four feet ahead of the car, and, but for the extraordinary happening of the deceased either jumping or falling out of the buggy, no harm would have come to him.—*Little v. Carolina C. R. Co.*, 118 N. C. 1072, 24 S. E. 514."

In the case of *B. R., L. & P. Co. v. Camp*, 161 Ala. 456, 460, 49 South. 846, 847, the evidence was in dispute as to whether or not the plaintiff's buggy backed into the rear end of the defendant's car; and the case was reversed for the refusal of the court to instruct for the defendant if such were found to be the facts. The court said: "The testimony is without conflict that the rear end of the car was the part thereof inflicting the damage, and that by reason, as the plaintiff contended, of the "overhang' of the rear end as the car passed over the curve.

One of the theories asserted by the defendant was that the injury was the result of the backing by the horse of the buggy into the rear end of the car, and not of the unaided, thereby, collision of the car with the vehicle. Obviously, if this insistence by defendant was credited by the jury, the injuries to plaintiff's property were not the proximate result of negligence of defendant's servant."

In the case at bar the physical facts precluded the possibility of injury or collision unless plaintiff ran too near the car after the front end passed him.

In the case of *South Covington & C. Street R. Co. v. Besse,* 108 S. W. 848, 33 Ky. Law Rep. 52, 16 L. R. A. (N. S.) 891, 892, the plaintiff's wagon was hit by the rear end of a passing street car, and it was held that there was no liability. In a note to the report of the case in 16 L. R. A. (N. S.), many cases are cited to support the holding. The court in that case said: "Every driver of a vehicle must know that the motorman cannot control the hind end of the car at a curve so as to keep it from swinging out as far as by nature it will go. It is therefore incumbent upon the driver of a vehicle passing a street car to keep out of the way, and at curves to drive farther from the car than at other points. He must expect the car to stay on its track, and he must expect that the end of the car will swing out in turing the curve; and, if he does not make a sufficient allowance for the swing of the car, and drives so close to it that the car in turning strikes the vehicle, the fault is his own, and not that of the street car company. The motorman cannot leave his track. The driver of the vehicle has the whole street to drive on, and it is his fault if he does not drive far enough from the car to prevent the hind end of the car from hitting his wagon as he passes it. Under the proof, the court should have instructed the jury to find for the defendant."

In the case at bar, after the front end of the car passed plaintiff in safety, plaintiff knew that the motorman could not control the rear end of the car, nor put it any nearer to, or farther away from, plaintiff; and it was his duty to keep out of the reach of the car. Had he not, by either carelessness or design, approached nearer the street car track, he could not have been injured by a collision. We cannot give heed to the theory that the suction of the car pulled plaintiff or his machine under, or too near the car.

[Cox v. Brown.]

We find no error in this record of which the plaintiff can complain; and, if there were errors, they would be unavailing to reverse, because the trial court should have given the affirmative charge for the defendant. The only verdict and judgment was rendered which properly and legally could have been rendered in this case.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.