176 So. 203

BIRMINGHAM ELECTRIC CO. v. JONES.

6 Div. 9.

Supreme Court of Alabama.

June 28, 1937.

Rehearing Denied Oct. 14, 1937.

Huey & Welch, of Bessemer, for appellant.

Chas. W. Greer, of Birmingham, and Arthur Green, of Bessemer, for appellee.

594

BOULDIN, Justice.

Action for personal injuries to a pedestrian struck by a passing street car.

Count B of the amended complaint, on which the case went to the jury, alleges that the defendant, a common carrier of passengers for hire, was operating electric street cars on the streets of the city of Bessemer, upon tracks imbedded in the streets at grade; that at the "intersection of Nineteenth Street and Carolina Avenue, and while plaintiff was then and there on foot waiting to take passage upon said car as a passenger at a point at said intersection, which was a customary and regular stopping place for said cars of the defendant, the defendant did so negligently run and operate one of its said cars, namely, the South Bessemer car, that the same ran into, upon or against the plaintiff and as a proximate consequence thereof inflicted upon him the following injuries and damages."

■ This count disclosed a common right of pedestrians and the street car company to the use of the street, including the zone occupied by street cars in passing, each owing the duty of ordinary care. That plaintiff was on the street to take passage on the car does not negative such general duty, but rather the occasion for the exercise of such care, if any, as may be due an intending passenger.

■ When a duty of care is disclosed, a general averment of negligence is sufficient. The quo modo need not be averred. This form of complaint has been approved in street car cases. Birmingham Railway, Light & Power Co. v. Fox, 174 Ala. 657, 56 So. 1013; Birmingham Railway Light & Power Co. v. Bush, 175 Ala. 49, 56 So. 731; Birmingham Railway, Light & Power Co. v. Ryan, 148 Ala. 69, 41 So. 616; Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1.

Appellant relies upon a line of cases wherein the complaint affirmatively showed plaintiff was a trespasser, one to whom the defendant owed no general duty to conserve his safety; and no liability arises save for wanton injury or negligence after discovery of peril.

In such cases, it has been held, a general averment of simple negligence, one not disclosing a relation bringing him within the protection of the law as against the negligence averred, is subject to appropriate demurrer. These cases are differentiated in the Fox Case, supra.

Count B does not show plaintiff to have been a trespasser, but, to the contrary, shows defendant owed him the duty of ordinary care due to all pedestrians, if no other growing out of the plaintiff's position as an intended passenger.

■ Contributory negligence is matter for special plea. There was no error in overruling the demurrer to count B.

The major question on this appeal is whether defendant was due the affirmative charge on the evidence.

The place of the accident was at the intersection of Nineteenth street and Carolina avenue. The street car came west on Carolina avenue and turned north on Nineteenth street. Plaintiff was struck by the rear end of the street car as it rounded the curve; a point where the rear end had an outswing or overhang of some two and one-half feet in excess of the overhang on a straight track. Nineteenth street was a paved street of rather heavy traffic. Carolina avenue coming in from the east was surfaced with chert. The intersection was paved, extending to the east line of connecting sidewalks on the east side of Nineteenth street, so that pedestrians could go straight across on a pavement.

This was a regular scheduled stopping place to receive and discharge passengers. Owing to the traffic conditions and the accommodation of passengers in all kinds of weather, the regular stopping place was to bring the front end of the car to or about the edge of the pavement and to receive and discharge passengers at the front end of the car. Doors for this purpose were provided on the right hand side at front and rear.

There was a front door on the left to be used, primarily at least, by the employees of the defendant. A rule of the company forbade the taking on of passengers on the blind side of the car.

The plaintiff's evidence tended to show that for many months passengers had been frequently admitted by this left front door,

and on two former occasions, he had been so admitted.

Plaintiff's evidence tends to show that on the occasion of his injury, he had waited some time on or about the corner south of the stopping point; that on the approach of the car he walked north on the pavement to a point some three feet from the south rail of the track, where he stopped and gave a signal by waving the hand while the car was about 100 feet from the stopping place, that the motorman answered the signal by whistle, and slowed down the car as if to stop, reducing the speed to about five miles per hour, but did not stop. Instead, he suddenly turned on the current, speeded up the car to about ten miles per hour, as it passed him. The rear end of the car struck him as he was turning to walk away. It was at night. The crossing was well lighted. The street car was running behind scheduled time.

Defendant's evidence was to the effect that the car did stop, that a passenger alighted therefrom, that plaintiff did not take the position claimed by him, nor give any signal as the car approached, did not present himself as a passenger, but after the car started up walked into the danger zone and was struck by the rear end of the car.

As for these issues of fact, there was presented a clear case for the jury, unless under either version plaintiff was not entitled to recover as matter of law.

Appellant's view is that the affirmative charge was due defendant upon two grounds:

1st. That the evidence, as a whole, disclosed no negligence, no breach of duty on the part of the motorman, as the proximate cause of the injury.

2d. That as matter of law plaintiff was guilty of negligence proximately contributing to his injury, and barring a recovery.

Many cases are cited and discussed in briefs involving injuries from the outswing of a street car on a curve. These cases involve many varying conditions. Some deal with pedestrians, or vehicles using the street alongside the zone occupied by a street car passing on a curve. Others deal with alighting passengers, and a few with persons preparing to take passage.

The cases are reviewed in a note found in 55 A.L.R. 479, et seq. Subsequent decisions are collated in A.L.R. Blue Book, 1936 Revision.

In the absence of special circumstances, we think the law is well stated in Miller v. Public Service Corp., 86 N.J. Law, 631, 92 A. 343, L.R.A.1915C, 604, as follows: "The rule approved by the weight of authority is that, in view of the well-known fact that in rounding a curve the rear end of a street car will swing beyond the track, and overlap the street to a greater extent than the front, the motorman may rightfully assume that an adult person, standing near the track, who is apparently able to see, hear, and move, and, having notice of the approach of a street car, and of the existence of the curve, will draw back far enough to avoid being struck by the rear of the car as it swings around the curve in the usual and expected manner, and therefore no legal duty is imposed upon the motorman to warn such a person against the possible danger of a collision with the rear, because of the swing, if he remains in the same position."

This principle is recognized in our cases. Hamilton v. Birmingham Ry. L. & P. Co. 198 Ala. 630, 73 So. 950; Ross v. Brannon, 198 Ala. 124, 73 So. 439; Williford v. Atlantic Coast Line R. Co., 216 Ala. 309, 113 So. 44.

Such adult persons are chargeable with knowledge of an outswing of the rear end of a street car in general use when rounding a curve. The motorman has a duty to keep a lookout ahead, cannot well look out for people coming in contact with the side of the car. The law, therefore, casts on the pedestrian the duty of care to keep out of danger of such outswing from ordinary movements of the car. The rule applies to alighting passengers after they have reasonable time and opportunity to alight and remove from the zone of danger; and to intending passengers as regards the passing of the car while coming to a stop.

But, as in all cases, the general duty of ordinary care does obtain where the conditions known to the motorman, or which he is under duty to know, call for measures to safeguard the safety of alighting or prospective passengers.

A duty to an alighting passenger is to give reasonable time to alight and get out of the zone of danger. If hinderances are apparent, these must be regarded. Wil-

son v. International R. Co., 205 App.Div. 275, 199 N.Y.S. 562; Virginia Trust Co. v. Raymond, 120 Va. 674, 91 S.E. 613; White v. Connecticut Co., 88 Conn. 614, 92 A. 411, L.R.A.1915C, 609; Lyons v. Pittsburgh Rys. Co., 301 Pa. 499, 152 A. 687; Jamieson v. Pittsburgh Rys. Co., 309 Pa. 197, 163 A. 292.

So a duty to safeguard an intending passenger against injury from overhang at a curve is recognized in a number of cases. Dwyer v. Los Angeles Ry. Corp., 115 Cal. App. 709, 2 P.(2d) 468; Heva v. City of Seattle, 150 Wash. 61, 272 P. 41; Lasater v. Conestoga Traction Co., 306 Pa. 500, 160 A. 447; Laurent v. United Rys. Co. (Mo.Sup.) 191 S.W. 992.

■ This principle is recognized in Montgomery Light & Traction Co. v. O'Connor, 204 Ala. 24, 85 So. 384. In most, if not all these cases, it was held the questions of negligence on the part of the motorman and of contributory negligence on the part of the injured, were for the jury. Dealing with the case before us, one duty to an intending passenger is to. stop and receive him.

If a prospective passenger presents himself at a regular stopping place for the admission and discharge of passengers, and by signal makes known to the motorman his purpose, it is the duty of the motorman to stop and receive him. This is a manifest duty arising from the business of a common carrier of passengers, the business for which the carrier holds his franchise. Birmingham Railway, Light & Power Co. v. Anderson, 3 Ala.App. 424, 57 So. 103; Pullman Car Co. v. Krauss, 145 Ala. 395, 40 So. 398, 4 L.R.A.(N.S.) 103, 8 Ann.Cas. 218; North Birmingham Railway Co. v. Liddicoat, 99 Ala. 545, 13 So. 18; Illinois Central R. Co. v. Smith, 85 Miss. 349, 37 So. 643, 70 L.R.A. 642, 107 Am.St.Rep. 293; 2 Hutchins on Carriers, §§ 963, 966; Nellis on Street Railways, § 275, p. 547.

If the jury believed plaintiff's version, he took his position at a point just a few feet in front and to the left of the point where the front end of the car regularly comes to a stop, and there made known to the motorman his intention in ample time to come to a stop; that the motorman responded to this signal, and slowed up as if to stop.

■ Much evidence and argument is devoted to whether under the circumstances, the plaintiff was entitled to enter the car on the left side. Manifestly, the company could make and enforce reasonable rules in this regard. The rule, if any there was, actually observed in this regard at this point, may reflect light on the propriety of the plaintiff's taking that position.

■ But, assuming this motorman knew of no such custom, or, if he did know it, was under no duty to admit him on the left, in violation of rules, it would not follow, as matter of law, that he owed no duty to stop. The position of plaintiff was such, according to his evidence, that, if the car stopped as usual, only two or three more steps were required to enter by the right front door than by the left. Nothing appears which would justify the motorman in assuming he would not enter the right front door, when given the opportunity.

■ Under the whole evidence, we conclude the duty to stop the car was clearly a question for the jury.

If this duty was breached, and by such breach the plaintiff was put in a position of peril, directly resulting in his being struck by the rear of the car, a case for the jury was presented on the question of defendant's negligence as the proximate cause of the injury.

It cannot be said, as matter of law, that one who in disregard of legal duty, puts another in a position of sudden peril, is free of causal negligence in assuming that the person so endangered will extricate himself therefrom. If, as plaintiff testified, the motorman was looking at him as he passed, a degree of caution, at least not to speed up the car and increase his peril, we think also a question for the jury. Birmingham Ry., L. & P. C. v. Williams, 158 Ala. 381, 48 So. 93; Atlantic Coast Line Ry. Co. v. Webb, 112 Fla. 449, 150 So. 741, 746.

A most vital question, therefore, is whether plaintiff was chargeable with contributory negligence under any and every reasonable view of the evidence.

■ It is argued that plaintiff was negligent in taking a position and standing within the zone of the outswing of the car, in that he could readily have taken his position on the right-hand side of the track with reference to the approaching car, and been out of the zone of danger. This, on the well-recognized principle that if a safe and a dangerous way are equally

open, it is the duty of the party to select the safe rather than the dangerous one.

 This principle has no application, if both places are safe, unless and until rendered unsafe by a breach of duty on the part of him who relies on such principle. Under plaintiff's version he was under no duty to anticipate this car would pass him by and put him in danger from the outswing.

The real inquiry, if the jury believed the plaintiff, is whether he was lacking in ordinary care for his own safety after being put in a position of peril.

 Without dispute, he could have escaped by stepping back one or two steps before the rear portion of the car reached him. Whether he was negligent, wanting in ordinary care, turns much on when he became aware of his peril. Not until it becomes apparent that he is being put in a place of peril by the wrongful act of the other does the duty arise to adopt means of escape. Until then, he may rely on the performance of duty by the other.

 The rule recognized by this court in such cases is that the plaintiff must have become aware of his danger, conscious of his peril, and then was lacking in ordinary care. This is usually a question for the jury. Birmingham Stove & Range Co. v. Vanderford, 217 Ala. 342, 116 So. 334; Alabama Co. v. Sanders, 202 Ala. 295, 297, 80 So. 360; Richmond & Danville Ry. Co. v. Farmer, 97 Ala. 141, 12 So. 86; Louisville & N. R. R. Co. v. Thornton, 117 Ala. 274, 282, 23 So. 778; Cook v. Central R. R. & Banking Co., 67 Ala. 533; Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276; Morgan v. M. & O. R. Co., 202 Ala. 461, 80 So. 845; Louisville & N. R. Co. v. Naugher, 203 Ala. 557, 560, 84 So. 262; Jones v. Ripley Stave Co., 203 Ala. 60, 82 So. 20; Labatt's Master and Servant, § 332.

 A careful study of the evidence leads us to the conclusion that the exact position of the car when plaintiff realized it was not going to stop was a jury question.

In plaintiff's evidence, are such expressions as these:

" * * * as he struck the edge of the street, he slowed up until he was possibly running between five and ten miles an hour, but he didn't stop, just slowed up momentarily and then shot the juice to it, and come right up to the curb there and the back end of that car hit me and I was down. I first learned that the street car was not going to stop when it kept on rolling, kept on going. At the time that he shot the juice to it, and it picked up speed, as I just told the jury, I was standing right where I was when the front end of the car rolled by me. * * * At the time he shot the juice to the car as it went around the curve, he must have been running around ten miles an hour, at the time the back end got to me.

" * * * I didn't step back; because I thought he was going to stop. It had passed the place of stopping then. * * * In my judgment when it passed me, where I was standing, it ran by me, it was running about five miles an hour. It ran by me about five miles an hour. And as it got to me, it ran about five to ten miles an hour. It entered the curve there and picked right on up in a hurry too."

The jury could infer the front end of the car passed him while still slowed down as if to stop, that he was still expecting it to stop until it was speeded up. His attention directed to the movement of the car, expecting it to stop, then realizing that it would not stop, with the surprise and probable sense of imposition from such treatment, were all natural mental reactions, before his attention would turn to probable danger from his position. The length of the car was, so far as appears, about 50 feet. A car going at the rate of ten miles per hour moves $14\frac{2}{3}$ feet per second. While the central section of the car was passing the swing was away from and not toward him. Although in full possession of his senses and normal capacity to think and move, he was 70 years of age. There is no presumption that one remains in a place of danger after realizing such position, and with ready means of escape. The question of contributory negligence was for the jury.

We have carefully considered all other questions presented in argument. Most of them need no further treatment than we have already given in the foregoing.

Touching the testimony on the item of $50 paid a special nurse in the hospital, the evidence of plaintiff and Dr. Waldrop fully sustained this item as a reasonable charge.

 The evidence of the uniform stopping place, and the habit of taking on passengers on the left, as before intimated,

598

were competent in explanation of the act of plaintiff in taking his position on this occasion.

■ Refused charges are either affirmative charges in effect, or misleading in ignoring phases of the evidence, or otherwise properly refused on principles already discussed.

As we have held, the question of the duty of the motorman to stop this car at or about the usual stopping place, his breach of such duty thus placing plaintiff in a position of peril and directly causing the injury by wrongfully swinging this car against him, were questions for the jury.

If found for plaintiff, then the question of his voluntarily placing himself in a position of peril by standing at that point was necessarily a jury question.

If not, and his position was rendered perilous by the wrongful act of the motorman, then the question of when he became aware, conscious of his peril, the need for measures of escape, and want of ordinary care in availing himself thereof, were questions for the jury. The duty to look out at all times for one's safety from rightful movements of the car, is wholly different from the duty to anticipate movements in violation of the duties of a common carrier.

■ The time to avoid danger in the one case is before getting into imminent peril. In the other the duty only arises after the unexpected has happened, through breach of duty toward him, and he has become conscious of peril. This is to be determined by all the circumstances, diverted attention, the instinct of self-preservation, etc.

It is argued the verdict was opposed to certain charges given at defendant's request. Some of the given charges were justified only on the theory of the case made by defendant's evidence as set out in the beginning of this opinion. We do not think they exclude the right of recovery on plaintiff's version of the case.

This would be to accord them the force of the affirmative charge.

We find no sufficient ground to reverse the cause, nor to disturb the verdict of the jury.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.