## ATLANTIC COAST LINE R. CO. v. MITCHELL.

### No. 11743.

Circuit Court of Appeals, Fifth Circuit.

Nov. 8, 1946.

M. B. Peacock and H. H. Perry, Jr., both of Albany, Ga., and G. L. Reeves, of Tampa, Fla., for appellant.

---

S. B. Lippitt, of Albany, Ga., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Mrs. Henry Mitchell originally brought this action against the Atlantic Coast Line Railroad Company in the City Court of Albany, Georgia, under the provisions of sections 105-1307 and 105-1308 of the Code of Georgia Annotated, to recover damages for the death of her daughter, Rhona Russell; the defendant removed the action to the court below. Rhona Russell's death occurred September 30, 1944, when she attempted to board a passenger train of the defendant railroad at Albany, Georgia. The jury rendered a verdict in the sum of $15,000 in favor of the plaintiff, and the defendant appealed from the judgment entered thereon.[1]

The deceased was proceeding, as a coach passenger, from Detroit, Michigan, to Tampa, Florida, on a passenger train known as the Southland, and thereon she met another passenger, Robert L. Marovec. Upon the arrival of the train in Albany, the deceased, in the company of Marovec, alighted for the purpose of obtaining refreshments. They first went into a restaurant located off the premises of the station; later they entered a restaurant in the station. When they emerged, they saw that the Southland, on the third track, was departing at a speed of about four to five miles an hour.[2] They immediately ran toward the moving train. Marovec stopped to inquire of the general yardmaster of the railroad whether the moving train was his train to Tampa. While Marovec was eight to ten feet behind the deceased, she attempted to board the third Pullman car from the rear of the train.[3] The trap of this Pullman car was up and the door was open. The evidence as to whether the deceased had anything in her hands is in conflict. Marovec testified as to the facts surrounding the death of the deceased as follows:

"When Miss Russell grabbed hold of the grab iron, the momentum of the train swung her around, so that her back hit the side of the train and she was knocked down on her back at the edge of the platform with her feet in the direction of the rear of the train. In an attempt to sit up, due to the excitement, her feet came up first and hooked on the undercarriage of the train. Her knees gave way, and she was pivoted end from end, so that her back was to the rear of the train and she was in a sitting position. She was then struck in the back of the head by the undercarriage of the train and was pivolated approximately ninety degrees clockwise and she then fell backwards off the edge of the platform and her neck was resting on the rail. I took hold of her ankles in an attempt to pull her away and just then the wheels ran over her neck at the same moment."

Several witnesses testified as to the speed of the train at the time the deceased attempted to board it. The estimations varied from eight to ten miles per hour up to twenty-five to thirty miles per hour.

The alleged negligence of the defendant consisted of: (1) Starting the train before the deceased boarded it; (2) failing to make an effort to prevent deceased from undertaking to board the train and to warn her of the danger of boarding; (3) failing to make an effort to stop the train and prevent injury to deceased; (4) operating the train with one of the vestibule doors open; (5) attaching to the train two locomotives, having twice the power necessary to pull the train, and operating the train at an unusual, excessive, and unnecessary rate of speed.

On this appeal the railroad contends, first, that the district judge committed several harmful errors in his charge to the

---

[1] The only evidence in the record as to the amount of "the full value of the life of the decedent" is $27,297.60. Obviously, the jury reduced this sum to $15,000 by applying the statutory rule of comparative negligence.

[2] No evidence appears in the record to contradict the speed of the train at this instant.

[3] Marovec did testify that the car she attempted to board was the sixth car from the rear, but he also testified that he was not sure about this; the other witnesses were positive that it was the third car from the rear.

jury, and, second, that he erred in ruling that the railroad was not entitled to a verdict as a matter of law, for one of the following reasons: (a) The evidence disclosed no violation by the railroad of any duty due the deceased; (b) the evidence disclosed that the sole proximate cause of her death was her own conduct in undertaking to board the train after it had begun to move out of the station; or (c) the deceased could have, by the exercise of ordinary care, avoided the consequences of the railroad's negligence. We will assume but not decide that the district judge correctly charged the jury and that the district judge correctly refused to direct a verdict for the railroad on the ground that the evidence disclosed no violation by the railroad of any duty to the deceased.

The evidence in the record is not in conflict with regard to the facts material to our views of the case. It establishes that the deceased could have, by the exercise of ordinary care, avoided the consequences of any negligence on the railroad's part. Stated in different words: The evidence shows that the deceased's own conduct in attempting to board the train moving at least eight miles per hour was the sole proximate cause of her death.

The applicable statutory law of Georgia provides: [4]

Sec. 94-703. (2781) "Consent or negligence of person injured as defense; comparative negligence as affecting amount of recovery.—No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him."

Sec. 105-603. (4426) "Diligence of plaintiff.—If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

In construing these sections, the Sixth Circuit Court said: [5]

"Sections [94-703 and 105-603], when read together, introduce a variation from the common law in one respect only. They declare, first, that a plaintiff shall not recover when the accident is caused by his own negligence. They further declare that, even if the defendant was negligent in such a way as to cause the injury, the plaintiff shall not recover if, with the defendant's negligence as an existing condition of the situation, he could have avoided its consequences by ordinary care. So far these rules are the same as those established at the common law. * * * Finally, however, they provide that, when the negligence of both parties is concurrent and contributes to the injury, then the plaintiff shall not, as at common law, be barred entirely, but may recover damages reduced below full compensation for the injury by an amount proportioned to the amount of the default attributable to him. * * *"

This construction is in accord with that of the Georgia courts: [6]

"Thus, if the plaintiff and the defendant were both negligent, the former can recover, unless his negligence was equal to or greater than the negligence of the defendant, except that this rule is further qualified by the provisions of section [105-603], * * * which provides that if the plaintiff, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not, in such event, entitled to recover. * * * The rule stated in section [105-603], however, applies only where the defendant's negligence became apparent to the person injured, or where, by the exercise of ordinary care, he could have become a-

---

[4] Sec. 18-201 of the Georgia Code Annotated defines "passenger," but no contention is raised upon this appeal that the deceased was not a passenger.

[5] Alabama Great Southern Ry. Co. v. Coggins, 6 Cir., 1898, 88 F. 455, 460.

[6] Central of Georgia Ry. Co. v. Larsen, 1917, 19 Ga.App. 413, 91 S.E. 517, 520.

ware of it, and he thereafter failed to exercise ordinary and reasonable diligence to avoid the consequences of the defendant's negligence. * * *"

The question of proximate cause, under the undisputed facts of this case, is a matter of law to be determined by the court and not one of fact for submission to a jury. The correct rule is set out in Dodson v. Southern Railway Co.[7]

"Questions of negligence, proximate cause, and failure to exercise ordinary care to avoid the consequences of another's negligence are questions of fact which are ordinarily for determination by a jury under proper instructions from the court as to the applicable principles of law, but in plain and indisputable cases the court may, as a matter of law, determine them."

In a syllabus written by the Supreme Court of Georgia in Ball v. Walsh[8] that court said:

"The question of negligence is, or course, usually one for the jury. Where, however, the allegations of a petition clearly disclose that the plaintiff, by the use of ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, the petition is subject to general demurrer; and where such fact does not clearly appear from the petition, but is manifest from the evidence submitted on the trial by the plaintiff, a nonsuit is proper."

The language of the Supreme Court of Georgia in two other cases is apropos to the instant situation. In Briscoe v. So. Ry. Co.[9] the court said:

"We do not mean to say that there was no evidence of negligence on the part of the defendant company. The jury might certainly have found that it was guilty of negligence * * *; but there was no testimony upon which a finding that the company's servants in charge of the train were guilty of wantonness, or of a willful disregard of the plaintiff's safety, could stand. He was struck at the very instant he got upon the edge of the track. There was no time for the company's servants to do anything after he placed himself in this position. The collision was then inevitable. There is no support in the evidence for the theory that the plaintiff was 'run down' and hurt. On the contrary, even after the defendant's negligence became, relatively to the plaintiff, operative and threatening, it was still within his power, by exercising ordinary care, to avoid the consequences of that negligence, and therefore his case undoubtedly falls within the provisions of section [105-603]. * * *"

In Barber v. East & West Ry. Co.[10] the court said:

"Inasmuch as it was apparent from the evidence of the plaintiff that he could, by the exercise of ordinary care, have avoided, not only the injury, but the consequences to himself of the negligence of the defendant, even if such negligence was shown, he was not entitled to recover, and the nonsuit was properly awarded. * * *"

The court below upon defendant's motion should have set aside the verdict and rendered a judgment in the defendant's favor in accordance with Rule 50(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

[7] 1937, 55 Ga.App. 413, 190 S.E. 392, 395.

[8] 1912, 137 Ga. 350, 73 S.E. 585.

[9] 1897, 103 Ga. 224, 28 S.E. 638, 639.

[10] 1900, 111 Ga. 838, 36 S.E. 50.