**HUFF v. LOUISVILLE & NASHVILLE R. CO. et al.**

No. 13725.

United States Court of Appeals
Fifth Circuit.

July 24, 1952.

Amos L. Ponder, Jr., New Orleans, La., for appellant.

Harry McCall, Jr., Harry B. Kelleher, Geo. B. Matthews, all of New Orleans, La., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The District Court entered summary judgment for the defendants. The deposition of the plaintiff had been taken and the court was of the opinion that under the plaintiff's own version of the accident there was no liability on the part of the defendants.

The plaintiff, a passenger of the defendant railroad company, traveling in a Pullman car, departed Washington, D. C., May 13, 1950, at approximately 7:15 p. m. en route to New Orleans, Louisiana. On the next day approximately one-half hour before arriving at Flomaton, Alabama, the

plaintiff made inquiry of the Pullman porter as to whether or not a telegram could be sent from the train. He was advised that the porter could not attend to it, but that the plaintiff himself could send the message from the railroad station either at Flomaton or at Mobile, Alabama. As an added precaution the plaintiff proceeded to the lounge car adjoining his Pullman car and made inquiry of the porter of that car, and received information to the same effect. Both porters told him that the train would stop at Flomaton for ten minutes, which would allow him ample time to send the telegram. The porter of his Pullman car brought the plaintiff some telegraph blanks and, to avoid unnecessary delay, the plaintiff wrote out his message before the train arrived at Flomaton.

When the train reached Flomaton and the plaintiff debarked, the porter of his Pullman car first held out his hand for a tip and then withdrew it recognizing that the plaintiff had not reached his destination. At that time there was a freight train standing on a track between the railway station and the train on which the plaintiff was a passenger. This freight train was split, the cars being uncoupled directly in front of the main entrance to the station, in order to give passengers a passageway between the station and the train upon which the plaintiff was a passenger. The plaintiff testified that it took less than a minute to complete the leaving of his message for transmission, and that during this time the gap or split in the freight train had been closed by the coupling of the cars, thereby preventing an unobstructed path to his train. There was no testimony of any warning of the immediate departure of the plaintiff's train, and the plaintiff testified that he heard no signal of "all aboard" or other indication that his train was about to depart. As the plaintiff returning to his train proceeded around the rear end of the parked freight train, he observed that his train was already in motion.

He ran across the intervening track, mounted the concrete platform adjacent to his train, grasped some projection or protuberance from a car and running along by the side of the train attempted to get two Pullman porters to open the car door so that he might enter, the lower half of the door being closed. The plaintiff could see that the porters replied to him but he could not understand what they said. He continued trotting along by the side of the train, which was moving slowly at first but accelerating its speed. When that car had passed, he pleaded with another porter to stop the train, calling to each of them that he was a passenger. The plaintiff never did step upon the moving train. Just after the entire train had passed him, he lost his equilibrium, probably from the momentum of running, and tumbled over the edge of the concrete platform, striking his face against one of the steel rails and receiving a fractured bone and painful injuries.

Summary judgment is not authorized to cut litigants off from their right of trial by jury if there is any genuine issue for the jury's determination. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967; Chappell v. Goltsman, 5 Cir., 186 F.2d 215, 218. Where negligence may reasonably be inferred even from undisputed facts, it is for the jury to say whether negligence shall be so inferred. 38 Am.Jur., Negligence, Sec. 345, page 1047; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413, 93 L.Ed. 497; Chicago R. I. & P. R. Co. v. Consumers Coop. Ass'n, 10 Cir., 180 F.2d 900, 904.

In the absence of regulation by Congress, the liability of a common carrier to an interstate passenger is to be determined in accordance with the law of the state where the injury occurs. 10 Am.Jur., Carriers, Sec. 1111; Atlantic Coast Line R. R. Co. v. Mitchell, 5 Cir., 157 F.2d 880; Atlantic Greyhound Corp. v. McDonald, 4 Cir., 125 F.2d 849; Tobin v. Pennsylvania. R. Co., 69 App.D.C. 262, 100 F.2d 435; Wells v. Mo. Pac. R. Co., 8 Cir., 87 F.2d 579; American Law Institute Restatement of Conflict of Laws, Secs. 378 and 379.

Several propositions of law prevailing in Alabama and here applicable are

well stated in Louisville & N. R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 851, 118 A.L.R. 1318:

> "Having assumed the position of a common carrier for hire of passengers, such common carrier is not an insurer of the safety and comfort of its passengers, its duties being to exercise the highest degree of care, skill, and diligence known to competent operators of railroad passenger trains to protect their passengers while boarding the train, in transit and alighting therefrom. * * *
>
> "Generally speaking, it is understood in the books that the proximate cause of an injury is the primary moving cause which, in the natural and probable sequence of events, and without the intervention of a new or independent cause, produces the injury. * * *
>
> "Where the act and the injury are not known by common experience to be naturally and reasonably in sequence and the injury does not in the ordinary sequence of events and under the circumstances follow from the act, they have been held not sufficiently connected to make the act the proximate cause. * * * And in Central of Georgia Ry. Co. v. Barnitz, 14 Ala. App. 354, 363, 70 So. 945, 949, it is declared that 'the carrier, if its servant was guilty of negligence, should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed' would have 'thought reasonably probable to follow.' * * *."

(The asterisks indicate that the Court's citations of authorities are omitted.)

As to the conduct of a person in an emergency constituting contributory negligence, the Alabama courts are in practical accord with the statement of law in American Law Institute Restatement of Torts, Volume 2, Sec. 470:

> "The fact that the plaintiff is acting in an emergency not created by his own antecedent negligence is a factor to be taken into account in determining whether his conduct is free from contributory negligence."

See Birmingham Elec. Co. v. Jones, 234 Ala. 590, 176 So. 203, 209.

In Central of Georgia Ry. Co. v. Hingson, 186 Ala. 40, 65 So. 45, 46, 47, referring to the conduct of a passenger attempting to board a moving train after he had alighted at an intermediate point, the Alabama Supreme Court speaking through Chief Justice Anderson said:

> "The law does not exact of him *great* care, but reasonable and ordinary care; such care as would be exercised by an ordinarily prudent person similarly situated.
>
> " * * * It was also a question for the jury as to whether or not the plaintiff was guilty of subsequent or concurrent contributory negligence."

In the present case, the train crew knew or were charged with notice that a passenger was absent from the train in reliance upon information that the train would stay at the station ten minutes. When it actually departed in one minute or less, the circumstances may have been such that a jury could reasonably believe that the passenger about to be left behind would try to catch the train, and that, his predicament suddenly confronting him, he might even run along by the side of the moving train as long as there was any hope for him to be taken aboard.

The case of Atlantic Coast Line R. Co. v. Mitchell, 5 Cir., 157 F.2d 880, does not control the decision of this case. That case did not go off on motion for summary judgment; it was decided under Georgia law; and the facts and circumstances of the two cases were materially different.

In the present state of the record we cannot say that upon full trial no jury question would have been presented upon the issues of negligence, proximate cause and contributory negligence. The District Court erred, therefore, in giving summary judgment for the defendant, and the cause is reversed and remanded for trial on its merits.

Reversed.