## KAGY *v.* WESTERN UNION TELEGRAPH COMPANY.

### [No. 5,475. Filed January 4, 1906.]

1. CONTRACTS.—*Breach.*—*Damages Recoverable.*—The defendant who violates his contract with plaintiff is liable for all damages naturally arising or reasonably supposed to be expected to arise from such breach. p. 78.

2. DAMAGES.—*Speculative.*—*Proximate Cause.*—*Telegraphs and Telephones.* — *Failure to Send Message.* — The damages for which defendant telegraph company is liable for its failure to send a message must result from such failure as a proximate cause, and must not be speculative. p. 78.

3. SAME.—*Measure of.*—*Telegraphs and Telephones.*—*Failure to Send Message.*—Unless the defendant telegraph company has notice from the sender or from the nature of the message that a failure to send same will be attended with damages none are collectible except the cost of such message. p. 79.

4. TELEGRAPHS AND TELEPHONES.—*Failure to Deliver Message.*—*Anticipation of Injuries.*—A telegraph company failing to send plaintiff's message to his father: "Come at once prepared to stay. We are both sick," without other warning or notice, can not be presumed to have known that its failure to deliver same would, in the natural course of events, cause a rupture of plaintiff's intestine. p. 79.

5. SAME.—*Failure to Deliver Message.*—*Anticipation of Injuries.*—Where defendant telegraph company failed to deliver plaintiff's message to his father, informing such father that he and his wife were sick, plaintiff can not recover damages therefor because of plaintiff's being deprived of his father's nursing, when defendant was not apprised that such father was experienced as a nurse. p. 80.

6. SAME.—*Failure to Deliver Message.*—*Mental Anguish.*—*Damages.*—A telegraph company is not liable for plaintiff's mental anguish resulting from its negligent failure to deliver a message. p. 81.

7. SAME.—*Failure to Deliver Message.*—*Mental Anguish Followed by Physical Injury.*—*Damages.*—No damages are collectible for physical injuries sustained as a result of mental anguish caused by a telegraph company's negligent failure to deliver a message. p. 81.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Vetis E. Kagy against the Western Union Telegraph Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Cox, Reasoner & Ward,* for appellant.

*Chambers, Pickens, Moores & Davidson, Mitchell & Mc-Clintic* and *George H. Fearons,* for appellee.

BLACK, P. J.—The appellee's demurrer for want of sufficient facts to each of the two paragraphs of the appellant's complaint was sustained.

After preliminary matter it was alleged in the first paragraph: That on October 7, 1902, the appellant and his wife were dangerously sick with typhoid fever at their home in Peru, Indiana; that the appellant's father, Leander Kagy, was then living near Bloomville, Ohio, and there existed between the appellant and his father the affection and close relation of father and son, and the appellant became desirous and anxious for the presence of his father, who was an efficient and careful nurse, and had had large experience in nursing the sick, as appellant knew; that nurses competent to treat and wait upon typhoid fever patients were then scarce in Peru and vicinity, and the condition of the appellant and his wife was such that it became necessary to secure a competent nurse and assistant during said sickness; that, for the purpose of securing the immediate presence of the appellant's father, to comfort, nurse and assist the appellant during the sickness, the appellant, on that day, wrote and sent to the appellee's office in Peru, by a special messenger—Sophie M. Kowalk—a dispatch, of which a copy was set out, as follows: "Peru, Indiana. To Leander Kagy, Bloomville, Ohio. Come at once prepared to stay. We are both sick. V. E. Kagy."

It was alleged that the special messenger took this dispatch to appellee's office in Peru, and stated to the agent in charge of the office that she had a message to be sent to Leander Kagy, at Bloomville, Ohio, that Mr. and Mrs.

Kagy v. Western Union Tel. Co.—37 Ind. App. 73.

Vetis E. Kagy were ill, that appellant's father lived in the country, and she asked the agent what the charges would be, and he informed her that the fee or charge for the transmission of the dispatch to Leander Kagy would be fifty cents, which she, for and on behalf of the appellant, then and there paid, and immediately returned to the appellant and informed him that the message had been delivered as aforesaid; that the appellee thereupon transmitted the dispatch to Bloomville, Ohio; that the agent in the office at Bloomville did not deliver it to Leander Kagy, but immediately sent to the office of the appellee at Peru a service message, set out, which was addressed, "Peru, Indiana," and stated: "Yours to-day to Kagy sqd. Same will you guarantee $1 delivery charges? [Signed] Bloomville, Ohio, October 7." It was alleged that the meaning of this message, as known and understood by appellee's agent at Peru, was that the message of the appellant to his father had been received at Bloomville, Ohio, and would be delivered immediately to Leander Kagy at that place, if $1 charge should be guaranteed by the appellant or some one on his behalf; that the service message was received by appellee's agent at Peru at 5 o'clock, October 7, 1902; that appellant lived at a place described, in Peru, and the appellee's agent had this address, with the copy of the dispatch filed for transmission; that the office was within five squares of the appellant's residence, as appellee's agent knew; that appellant was then ready and willing to pay the $1 to guarantee delivery; that the message to Leander Kagy could have been delivered in time for him to start for Peru by the night train from Bloomville, if the $1 for guaranty had been paid; that he was ready and willing to go to assist and nurse the appellant immediately upon the receipt of the telegram; that appellee's agent at Peru negligently received and retained the service message, and negligently failed and refused to notify the appellant that the message

would not be delivered without the payment of the $1 guaranty, and negligently failed to notify the appellant that the message to his father had not been delivered; that by reason of the aforesaid negligence of the appellee the appellant believed that the message had been transmitted, and the fee of fifty cents so paid was all and every fee demanded or compensation expected or required by appellee for the transmission and delivery of the message to appellant's father; that appellant, understanding and believing that his father had received the message, expected him to arrive at Peru on October 8; that as train after train arrived from the East, and his father did not come, appellant hourly became more anxious and nervous, his fever became more violent, and, being without any competent nurse, and being compelled, by the nature of his disease, to get into and out of bed, under the control of his anxiety and the depression and despondency caused by the failure of his father to arrive, and by reason of having to get into and out of his bed, appellant, on the 10th day of October, suffered a perforation of an intestine, and suffered a collapse, whereby his temperature dropped from 103 to 97, and his death became imminent, but he afterward rallied, and after many weeks he was able to sit up and so far recovered that at the filing of this complaint he was able to attend to his ordinary affairs, but still suffered incurable and permanent injuries resulting directly from the mental anxiety, depression and despondency caused by the failure of his father to come as requested in said dispatch; that the failure of his father to come as requested, and to arrive on October 8, 1902, was caused directly by appellee's agent's failing and neglecting to inform appellant that a guaranty of $1 would be necessary; that, by reason of said negligence of appellee's said agent, appellant was deprived of the presence, care and nursing of his father from October 8 until October 11, 1902, and appellant's said collapse and permanent injuries

were directly caused by the want of nursing and care and the mental anxiety produced by the failure of his father to arrive, as expected, October 8, 1902; that by reason of said anxiety and despondency, and the permanent physical injuries as hereinbefore set forth, appellant suffered great mental and physical anguish, and his health had been permanently injured, to his damage, etc. Wherefore, etc.

In the second paragraph nothing is said about the service message, but it is alleged that the appellee's agent at Peru, to whom the appellant's dispatch was delivered, failed and neglected to transmit and deliver the dispatch to appellant's father until late on the day of October 10, 1902; that the failure of the appellant's father to come as requested, and to arrive on October 8, 1902, was caused directly by the appellee's agent's failing and neglecting promptly to transmit and deliver the telegram; and that by reason of said negligence of the appellee's said agent appellant was deprived of the presence, care and nursing of his father from October 8, 1902 to October 11, 1902, and his said collapse and permanent physical injuries were directly caused by the mental anxiety produced by the failure of his father to arrive as expected on October 8, 1902.

We will direct our attention to the matter discussed by counsel, the character of the appellant's injury and the cause thereof. There is want of clearness, directness and certainty in the complaint, in the statement of the appellant's injuries for which he seeks damages, and the cause or causes thereof. In the first paragraph it is said, however, that the collapse and permanent injuries were directly caused by the want of nursing and care, and by the mental anxiety produced by the failure of the appellant's father to arrive as expected; while in the second paragraph it is said that the collapse and permanent physical injuries were directly caused by the mental anxiety produced by the same failure to arrive.

The Supreme Court of this State and this Court have approved and followed the rule concerning damages, expressed in *Hadley* v. *Baxendale* (1854), 9 Exch. 341, as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known' and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

The general principle here laid down is applicable in such cases as the one before us, whether it appear from the form of the pleading to have been intended to declare upon contract or in tort, and the special circumstances under which the dispatch is sent, which may thus affect the question of damages, may be stated or indicated by the language of the dispatch, or may be imparted to the telegraph company otherwise. The damages recoverable must result from the default of the defendant as the proximate cause thereof. They may not be remote,

conjectural or speculative.  See *Hadley* v. *Western Union Tel. Co.* (1888), 115 Ind. 191; *Berkey & Gay Furniture Co.* v. *Hascall* (1890), 123 Ind. 502, 507, 8 L. R. A. 65; *Lowe* v. *Turpie* (1897), 147 Ind. 652, 670, 37 L. R. A. 233; *Western Union Tel. Co.* v. *Ferguson* (1901), 157 Ind. 64; *Acme Cycle Co.* v. *Clarke* (1901), 157 Ind. 271, 276; *Bierhaus* v. *Western Union Tel. Co.* (1893), 8 Ind. App. 246; *Western Union Tel. Co.* v. *Henley* (1899), 23 Ind. App. 14.  In 2 Shearman & Redfield, Negligence (5th ed.), §754, it is said to be settled in a majority of the courts that only the cost of the message can be recovered for failure to transmit a message properly and correctly, unless the telegrapher had notice, from the message itself or from the information furnished with it, that its nondelivery would probably be attended with other damages.  See *Western Union Tel. Co.* v. *Henley, supra,* and cases cited therein.

Assuming, for the purposes of the argument, that it could have been sufficiently established by satisfactory evidence that if the appellant had been informed promptly of the receipt of the service message he would have paid the extra charge, and the appellant's dispatch would then have been delivered promptly to his father, and he could and would have safely reached the appellant on the next day, or before his collapse and the rupture of his intestine, and that such injury resulted wholly or in part from the lack of his father's nursing, yet the rupture of an intestine can not fairly and reasonably be considered as arising naturally, according to the usual course of things, from the default of the telegraph company in not promptly delivering such a message as was sent, and it does not appear that the appellee had any information concerning the special circumstances, from which it could reasonably be supposed that such physical consequence from such a cause was contemplated, as a result of its default, at the time of the making of the contract or at the time of the default.

The person who presented the dispatch to the appellee's agent stated to him that she had a message to be sent to Leander Kagy, at Bloomfield, Ohio, and that Mr. and Mrs. Vetis E. Kagy were ill, and that the appellant's father lived in the country. Except that the appellant's father lived in the country, and inferentially that he was the addressee, and that the person sick other than the sender was his wife, no information in addition to that contained in the dispatch was imparted to the appellee. The information may perhaps be regarded as sufficient to apprise the appellee that failure to perform its duty by promptly sending and delivering the dispatch would probably result in disappointment, anxiety and "mental anguish" to the sender; but it does not appear that the appellee was notified by the dispatch or otherwise that the person to whom the dispatch was addressed was a careful and efficient nurse, or that he had large experience in nursing the sick, or that the appellee knew of such experience, or that nurses competent to treat the appellant's disease were scarce at Peru and in its vicinity, or that the appellant's condition or that of his wife was such that it had become necessary to procure a competent nurse and assistant, or that the appellant wrote and sent the message to the appellee's office for the purpose of procuring the immediate presence of his father to nurse and assist the appellant during his illness, or that default in the sending or delivery of the dispatch would result in any lack of nursing of the appellant. Whatever may be said in a proper case concerning an averment of the lack of a competent nurse as an adequate proximate cause of such a physical result, the matter is not properly involved in the pleading before us. See *Central Union Tel. Co.* v. *Swoveland* (1896), 14 Ind. App. 341.

It is now the rule of law in this State, in harmony with the weight of authority elsewhere, that damages can not

be recovered for mental anguish alone caused
6.  through the negligent failure of a telegraph company to deliver a telegraphic message. *Western Union Tel. Co.* v. *Ferguson* (1901), 26 Ind. App. 213; *Western Union Tel. Co.* v. *Ferguson* (1901), 157 Ind. 64, 54 L. R. A. 846. That this must be regarded as settled is not disputed in this case; but it is insisted on behalf of the appellant that we should hold that damages may be recovered where physical injury is consequent upon mental anxiety or anguish, as stated in this complaint, and the contention of counsel relates chiefly to this question, it being supposed by counsel for the appellant not to be decided or settled in this jurisdiction.

We need not lengthen this opinion by discussion of the various familiar instances in which mental suffering is admitted without question as an element in the
7.  assessment of damages. The question here presented in argument is, whether, in a case where the direct effect of the defendant's negligence is mental anxiety and distress, for which alone no damages are recoverable, however real and manifest the mental disturbance be, there may be recovery for physical consequence of such mental hurt. Every serious mental shock or tension has physical sequences of varying severity and duration, which are immediately connected with and naturally dependent upon the mental disturbance as the cause thereof. If mental injury of such character is so obscure and incapable of satisfactory investigation in a court of justice that it is wise policy not to submit the matter to a jury, the physical depression or irregularity reasonably to be expected therefrom is ordinarily not less difficult of being intelligently apprehended as a measure of damages. In the case before us the alleged consequence was the rupture of an intestine. Even where damages are allowed in such cases, as in some jurisdictions, for mere mental suffering, it is said that they "ought not to be enhanced by evidence of any circumstances which

could not reasonably have been anticipated as probable from the notice received by the telegrapher." 2 Shearman & Redfield, Negligence (5th ed.), §756, and cases cited.

Illness arising from the excitement which defamatory language may produce is not, it was held, that sort of damage which forms a ground of action. *Allsop* v. *Allsop* (1860), 5 H. & N. 534. The court treated the physical illness as it would the mental distress which caused the illness.

In *Kalen* v. *Terre Haute, etc., R. Co.* (1897), 18 Ind. App. 202, 63 Am. St. 343, where it was alleged that the defendant by its servant negligently let down a gate at a railroad crossing, and thereby the horse, drawing a carriage in which the plaintiff was riding, became frightened, etc., whereby the plaintiff received a severe nervous shock, was greatly frightened, and her life was put in great and imminent peril, and she had suffered great mental pain and anxiety, etc., we held that the complaint did not show a ground for the recovery of substantial damages. We said: "It is not shown that any physical ailment or distress followed as a consequence of the shock, which is not described as enduring, if that would make any difference in the case." —thereby confining the decision to the facts of the particular case.

In *Mitchell* v. *Rochester R. Co.* (1896), 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. 604, it was said: "Assuming that fright can not form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of the fright, or the extent of the damages."

In *Braun* v. *Craven* (1898), 175 Ill. 401, 51 N. E. 657, 42 L. R. A. 199, where the wrongful conduct of the defendant occasioned the plaintiff's fright, unaccompanied with physical injury, though a nervous shock and subsequent

illness resulted, it was held that there could be no recovery. See, also, *Ewing* v. *Pittsburgh, etc., R. Co.* (1892), 147 Pa. St. 40, 23 Atl. 340, 14 L. R. A. 666, 30 Am. St. 709; *Spade* v. *Lynn, etc., R. Co.* (1897), 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512, 60 Am. St. 393; *Cleveland, etc., R. Co.* v. *Stewart* (1900), 24 Ind. App. 374, and cases cited therein; *Gaskins* v. *Runkle* (1900), 25 Ind. App. 584.

We are unable to find any reason for allowing the recovery of damages for physical injury resulting from mental anxiety and suffering, occasioned by negligence, which would not require us to hold the defendant to liability where the consequence of such negligence is mental suffering alone.

Judgment affirmed.