## JONES et ux. v. WESTERN UNION TELEGRAPH CO.

(District Court, S. D. California, S. D.   June 5, 1916.)

No. 463.

1. TELEGRAPHS AND TELEPHONES ⬤═68(2)—DELAYING MESSAGE—MENTAL ANGUISH.
   Damages purely for mental anguish caused by negligence in transmission of a message cannot be recovered.

   [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 69; Dec. Dig. ⬤═68(2).]

2. TELEGRAPHS AND TELEPHONES ⬤═68(1)—DELAYING MESSAGE—MENTAL ANGUISH.
   Where mental anguish resulting from negligence in the transmission of a telegram caused plaintiff physical illness, such illness is the result of the mental anguish, and no recovery can be had therefor.

   [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 69; Dec. Dig. ⬤═68(1).]

3. TELEGRAPHS AND TELEPHONES ⬤═70(1)—NEGLIGENCE IN TRANSMISSION OF MESSAGE.
   Where a telegraph company, in transmitting a message, garbled it so that the addressee understood her father had died, and for that reason took a long journey, she may recover the necessary expenses of such journey.

   [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 72; Dec. Dig. ⬤═70(1).]

4. REMOVAL OF CAUSES ⬤═102—REMAND.
   Where, after removal to the federal court on the ground of diversity of citizenship, a demurrer was sustained to one of the causes of action, and the remaining cause of action was for less than the jurisdictional amount, the federal court will of its own motion remand the case to the state courts.

   [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223, 224; Dec. Dig. ⬤═102.]

At Law.   Action by Julius W. Jones and wife against the Western Union Telegraph Company, a corporation, begun in state court and removed on account of diversity of citizenship.   On demurrer.   Sustained as to one count of the complaint, and action remanded to state court, from whence it was removed.

Plaintiffs, husband and wife, brought suit in the state court, claiming damages in the aggregate sum of $3,050; $2,500 being laid in the first cause of action in the complaint, and $550 being laid in the second cause of action. On the ground of diversity of citizenship the cause was removed to this court, and the matter is before the court on a general demurrer only, interposed by the defendant to each of the two separate causes of action.

In the first cause of action it is alleged that in July, 1915, the plaintiffs were residing in Los Angeles, and that in that month defendant delivered a tele-

gram to plaintiff Elvira Jones, purporting to come from her brother, then living in the town of Hammond, state of Louisiana. The telegram as actually delivered to plaintiff read: "Father died this morning, will be buried to-morrow." As actually delivered to the defendant by the sender thereof, the telegram read: "Norman died this a. m., will be buried to-morrow." Plaintiffs allege that immediately upon the receipt of the telegram, worded as first above set forth, the wife took steps to make the trip from the city of Los Angeles to said town of Hammond, in the state of Louisiana; that she left Los Angeles on the following day, and in due course arrived at her destination. Upon her arrival there she found that her father had not been ill, and that no telegram had ever been sent by any one to her in the words or terms hereinabove set forth, but that the defendant had, as above stated, incorrectly transmitted the message to her, and had been grossly negligent in that regard, and had not exercised the necessary, or proper, or any, care in the transmission of the telegram delivered to it by plaintiff's brother. Plaintiff alleges that she would not have made said trip to said town of Hammond, save that she believed her father to have been dead, and also alleges "that by reason of the gross negligence and want of care on the part of the said defendant in transmitting the message hereinabove mentioned the plaintiff did undergo grievous mental suffering and anguish of mind and was rendered sick; her father was very dear to her, and she, the said Elvira Jones, was prostrated upon receiving notice of his death; that by reason thereof plaintiff Elvira Jones has suffered damage in the sum of $2,500."

In the second cause of action plaintiffs refer to the paragraphs with respect to the sending of the telegram as hereinabove recited, and in addition allege that, during the time plaintiff Elvira was engaged in making the trip to and from the said town of Hammond, her husband was compelled and did employ a nurse for the purpose of caring for the minor son of plaintiffs, and did pay therefor the sum of $20; that during said trip, and in consequence thereof, she was compelled to and did spend money for meals, car fare, and other incidental expenses necessarily incurred on said trip, amounting in all to the sum of $30, and in addition it is alleged that during the time the plaintiff was engaged in making said trip her husband, plaintiff Julius W. Jones, lost the services of the said wife and the comfort and convenience of her society, in consequence of which it is alleged he has been damaged in the sum of $500.

There is no ground of demurrer other than that no cause of action is stated in either count of the complaint.

Courtney Lacey and A. G. Bongiorno, both of Los Angeles, Cal., for plaintiffs.

Beverly L. Hodghead, of San Francisco, Cal. (Albert T. Benedict, of New York City, of counsel), for defendant.

BLEDSOE, District Judge (after stating the facts as above). [1] With respect to the first cause of action, it is apparent that the only damages claimed are based upon the fact that, because of the wrongful delivery of the message referred to, plaintiff Elvira did "undergo grievous mental suffering and anguish of mind," and "was rendered sick," and "was prostrated." It is clear that in all these allegations plaintiffs have but enlarged upon the term first employed, to wit, "mental suffering." No physical violence or injury to the person of plaintiff Elvira is claimed, and no physical disability or impairment is set forth, save that which must have arisen because of the intense mental suffering, grief, and anguish brought upon plaintiff because of the receipt by her of the information that her father had died.

The digests and many of the text-books unfortunately (Francis v. Western Union Telegraph Co., 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. Rep. 507) abound with references to cases

emanating from different courts of last resort in the United States holding that damages may be recovered for mental suffering induced by the wrongful transmission and delivery, or failure of delivery, of telegraphic dispatches. Beginning with a decision of the Supreme Court of the state of Texas rendered in 1881 (So Relle v. Western Union Telegraph Co., 55 Tex. 318, 40 Am. Rep. 805), and thence extending to various other states, it has been held that damages under such circumstances could properly be allowed. In every state where the so-called "Texas doctrine" has been followed, a veritable flood of litigation apparently has resulted, and in consequence, measured by mere multiplicity of citation, there is small wonder that members of the profession have been misled into the belief that such a frequently referred-to rule had developed into a general doctrine of approved standing. The genesis and growth of the doctrine, together with the limitations of necessity imposed upon it, and the embarrassment brought into being by it, are succinctly set forth in Western Union Telegraph Co. v. Choteau, 28 Okl. 664, 115 Pac. 879, 49 L. R. A. (N. S.) 206, Ann. Cas. 1912D, 824, and further reference thereto, in the light of the rulings quoted in that decision, is unnecessary.

By far, however, the preponderance of authority of courts of last resort, as is shown by citations in the Choteau Case, is to the effect that damages are not recoverable as for mere mental anguish, save as an accompaniment to some injury to person or property. This was but declaratory of the common-law rule. Allsop v. Allsop, 5 H. & N. Rep. 534; Lynch v. Knight, 9 H. of L. Cases, 592. In the light of the recent decision of the Supreme Court of the United States, decided April 3, 1916, entitled Southern Express Company v. John Byers, the question in the federal courts may now be considered as completely foreclosed, and the so-called "Texas doctrine" expressly and completely disavowed. That case, it is true, did not concern the allowance of damages as arising from negligence in the transmission or delivery of a telegraphic message, but the decision and the reasoning are applicable to, and conclusive of, such a situation, and announce in no uncertain language the attitude of the courts of the United States with respect to this much controverted point. It is to be hoped that the profession will govern themselves accordingly.

[2] Plaintiffs, however, though conceding the force and effect of the decision in the Byers Case, in so far as mere mental suffering or anguish of mind is concerned, contend that the case at bar is not controlled by that decision, in that it is alleged that, because of the wrongful conduct of the defendant complained of, plaintiff Elvira was "rendered sick," and in connection with this contention reliance, apparently, is placed upon a quotation used by Mr. Justice McReynolds in announcing the decision of the court in the Byers Case, and taken from Cooley on Torts (3d Ed.) page 94, wherein it was said that the rule denying recovery for mental suffering only rested "upon the elementary principle that mere mental suffering and anxiety are too vague for legal redress where no injury is done to person, property, *health,* or reputation." The argument rests upon the proposition that the Supreme Court apparently considered that an injury done to health (e. g., resulting "sickness"), even though it flow from mere

extreme mental suffering, is without the terms of the rule forbidding compensatory damages in cases based upon mental suffering alone. That point was in no wise involved, however, in the Byers Case; nothing but mere mental suffering had been relied upon therein. In addition, aside from what may have been intended by the precise language used by Judge Cooley in his text, both reason and authority to me seem to indicate that, before compensation may be had, there must have been that which gives rise, not to mere mental suffering or anguish, but to an actual injury to the person or property of the complaining party. Tyler v. Western Union Tel. Co. (C. C.) 54 Fed. 634; Western Union Tel. Co. v. Foy, 32 Okl. 801, 124 Pac. 305, 49 L. R. A. (N. S.) 343; Curtin v. Western Union Tel. Co., 13 App. Div. 253, 42 N. Y. Supp. 1109; Kagy v. Western Union Tel. Co., 37 Ind. App. 73, 76 N. E. 792, 117 Am. St. Rep. 278, 284. See, also, Westwater v. Grace Church, 140 Cal. 339, 73 Pac. 1055.

Within the limits of the rule as thus announced, sickness which is merely a sequel of mental suffering or anguish cannot be differentiated from mental suffering or anguish itself. To a person of unusual sensibilities or refinement, comparatively slight mental anguish might cause serious illness; but it would be obviously impossible to draw the line of demarcation between mere mental suffering on the one hand, and resulting illness or sickness upon the other, and consequently impossible to adopt any standard by which a jury could be guided in the allowance of relief. If the sickness be but an aggravated form of mental suffering, it would still be but mental suffering, and therefore not a basis for damages; if some entirely distinct form of sickness should ensue, still it could not reasonably have been anticipated, and consequently could not be said to have been a proximate result of the original negligence. Curtin v. Telegraph Co., supra. The idea is most aptly stated, in my judgment, in Mitchell v. Rochester Railway Co., 151 N. Y. 107, 109, 45 N. E. 354 (34 L. R. A. 781, 56 Am. St. Rep. 604) where it is said:

"If it be admitted that no recovery can be had for fright occasioned by the negligence of another, it is somewhat difficult to understand how a defendant would be liable for its consequences. Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright or the extent of the damages. The right of action must still depend upon the question whether a recovery may be had for fright. If it can, then an action may be maintained, * * * no matter how grave or serious the consequences. Therefore the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it."

This case, together with that of Nelson v. Crawford, 122 Mich. 466, 81 N. W. 335, 80 Am. St. Rep. 577, are both very persuasive in their holdings and reasoning that such a tort as is here complained of, resulting only in mental suffering and its more acute consequences, is not actionable. The demurrer, therefore, to the first cause of action is sustained, without leave to amend.

[3, 4] Actionable elements of damage are set forth in the second cause of action, in my judgment. If, because of the negligence of the

defendant, in the behalf mentioned, plaintiffs were compelled to, or in the natural course of events actually did, incur expense, it would seem, upon familiar principles, that they should be entitled to a recovery therefor. The total damages claimed in the second cause of action, however, amounting to only $550, are not within the jurisdiction of this court, in a proceeding removed from a state court, because of diversity of citizenship. It would seem proper, therefore, that the court, having determined that no cause of action is stated in the complaint as to any matter of which this court has jurisdiction, suo motu should remand to the state court, the proper tribunal for its trial, the cause of action set forth in the second count of the complaint.

An appropriate order, therefore, will be entered, sustaining the demurrer to the first cause of action, without leave to amend, and remanding the cause, in so far as the second cause of action alone is concerned, to the court from which removal was originally had.