Bertha KAUFMAN, Appellant,

v.

**WESTERN UNION TELEGRAPH COMPANY, Appellee.**

No. 15346.

United States Court of Appeals Fifth Circuit.

July 28, 1955.

Rehearing Denied Aug. 31, 1955.

DeVane, District Judge, dissented.

724

Oscar H. Mauzy, Otto B. Mullinax, and Mullinax & Wells, Dallas, Texas, for appellant.

Ashton Phelps, New Orleans, La., John W. Miller, Dallas, Tex., John H. Waters, New York City, Phelps, Dunbar, Marks & Claverie, New Orleans, La., of counsel, for appellee.

Before RIVES, Circuit Judge, and DAWKINS and DE VANE, District Judges.

RIVES, Circuit Judge.

This appeal is from a summary judgment for the defendant, Western Union Telegraph Company, the district court holding that for negligent delivery of an interstate telegram and wrongfully informing the addressee that it was a

death message when in fact it was not, there can be no recovery of damages for mental anguish nor for physical illness and medical expenses ensuing from such mental anguish.[1]

A preliminary question of federal jurisdiction not raised by the parties, but which the Court is bound to consider sua sponte, has given us some concern. The complaint does not affirmatively allege that the parties are citizens of different states. Its averments are: "That the plaintiff is a resident of Dallas, Dallas County, Texas"; "That the defendant, Western Union Telegraph Company, is a corporation organized under law with an office and place of business in Dallas, Dallas County, Texas, where service of citation may be had." The amount sued for, $20,000.00, is, of course, more than the jurisdictional amount. The complaint also alleges that the telegram was transmitted from Tulsa, Oklahoma to Dallas, Texas, and it may be that a suit for damages resulting from negligence in the delivery of an interstate telegram arises under the Constitution, laws or treaties of the United States, so as to give federal jurisdiction, 28 U.S.C.A. § 1331, but we have been cited to no case so holding, and we do not find it necessary to decide that question. For jurisdiction to be founded upon diversity of citizenship, 28 U.S.C.A. § 1332, it must affirmatively appear from the complaint that the plaintiff is a citizen of one state and the defendant a citizen of another. It is provided, however, by 28 U.S.C.A. § 1653 that: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The theory seems to be that "if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, * * * the formal defect in the pleadings did not deprive the Court of jurisdiction at the time when the action was filed, if such defect was later corrected." Stern v. Beer, 6 Cir., 200 F.2d 794, 795. Cf. Finn v. American Fire & Casualty Co., 5 Cir., 207 F.2d 113, 115. In all probability the plaintiff being a resident of Texas is also a citizen of that State. We are confident that the Western Union Telegraph Company is not incorporated under the laws of Texas. The 1950 edition of the Encyclopedia Britannica, Vol. 23, p. 533, indicates that it is a New York corporation. Since the question is not raised by the parties, and the allegations of jurisdiction if defective may be amended, we proceed to a consideration of the case on its merits. However, so that there may be no mistake about jurisdiction, unless the appellant, pursuant to 28 U.S.C.A. § 1653, quoted supra, files an appropriate amendment in this Court within ten days after this decision, the case will then be placed back on the rehearing docket and briefs invited on the question of jurisdiction.

The complaint alleged that the plaintiff resided at the Melrose Hotel in Dallas, Texas. She knew that her daughter, Janice Kaufman, was en route from Tulsa, Oklahoma to Dallas, Texas by airplane. Prior to departing by plane from Tulsa, the daughter dispatched a telegram over defendant's telegraph system. According to defendant's answer, the message was addressed to plaintiff, signed "Janice", and read, "Will be home at 7:46 American Airlines tonight."

In pertinent part the complaint continued as follows:

"Plaintiff would further show that the defendant in transmitting said telegram from Tulsa, Oklahoma to Dallas, Texas, did transmit same as a 'death message' and caused said message to be received at its station in Dallas, Texas, and placed same in an envelope and delivered same to its messenger and did advise said messenger that same was a death message, and did further cause said message to be by its messenger and agent delivered to the Melrose Hotel. That said messenger and agent of the defendant Western Tele-

---

1. The opinion of the district court is reported in 124 F.Supp. 146.

graph Company represented said message to be a death message to this plaintiff.

"Plaintiff would show that she is a woman with high blood pressure with a sensitive and nervous temperament. Immediately upon the receipt of the 'death message' she was rendered violently ill and went into a state of shock and it was necessary for her to receive immediate medical attention. Plaintiff would show that she has remained under the care of a doctor since that date. Plaintiff would further show that she received permanent and disabling injuries as a result of the receipt of the said death message, and that same has aggravated her condition of high blood pressure and has caused her to become weak and debilitated; has produced serious and lasting injuries to her ability to stand and to move about. In addition plaintiff would show that she has suffered extreme mental and physical pain and anguish as a direct and proximate result of said death message, all to her damage in the sum of $20,000.00.

"Plaintiff would show that the defendant was negligent in the transmission of the telegraphic message from Janice Kaufman to this plaintiff, and was negligent in delivering said message to its agent and messenger in representing said message to be a death message; and that said messenger and agent was negligent in causing the message to be represented as a death message to this plaintiff. That each act of negligence was a proximate cause of this plaintiff's injury and damage."

In addition to taking issue with the material allegations of the complaint, the defendant filed three complete affirmative defenses, which are hereinafter quoted. No affidavits were offered by either party; and the hearing of the defendant's motion for summary judgment consisted entirely of the following:

"The Court: May I ask you gentlemen to make an open Court agreement so I will understand the facts as presented by both parties?

"That is, that the plaintiff here was a guest at a hotel and that the delivery boy of the Western Union Telegraph Company, the defendant, handed a message to the clerk of the hotel, saying at that time, 'Here is a death message.' That, thereupon, the hotel clerk called the plaintiff in her room and said, 'I am sending up a death message for you.'

"Are those the facts?

"Mr. Miller: We will not dispute that. Yes, I will agree to that.

"The Court: Is that a fact?

"Mr. Miller: I will agree to that.

"The Court: Does the plaintiff agree those are the facts?

"Mr. Mullinax: I will agree that those are the facts, with this exception; it is my understanding that the Western Union agent was actually standing there by the phone and directed the clerk to tell the plaintiff that it was a death message. The messenger actually was passing on the information. He told the clerk that it was a death message. As I understand, it all happened at one time, that is what was represented to the plaintiff.

"Mr. Miller: I can't agree to that, for the reason, I understand it was a little Mexican boy, and I cannot agree that he was telling the clerk to call the lady.

"The Court: I can't ·enter any judgment unless you gentlemen agree upon the facts.

"Mr. Miller: The facts as plead in that respect, I agree to it, he has added something outside of the pleading, that he is not sure of himself, as to whether the boy would not leave the premises until the clerk had relayed the information upstairs.

"I will stipulate exactly as plead, that it is true that the young man went to the hotel clerk.

"The Court: I stated the facts, do you agree to that?

"Mr. Miller: Yes.

"The Court: Does the other side agree to that?

"Mr. Mullinax: Yes.

"The Court: Then I sustain the motion for summary judgment for the defendant, because it has long been the rule that that cannot be a recovery in the United States Court.

"Mr. Mullinax: Please note our exception, and we will give notice of appeal."

On a motion for summary judgment, the court must take that view of the pleadings, of the evidence if any, and of the record most favorable to the party against whom summary judgment is sought. 6 Moore's Federal Practice, 2nd ed., Para. 56.15(1), page 2114; Purity Cheese Co. v. Frank Ryser Co., 7 Cir., 153 F.2d 88.

Under that rule, defendant was, of course, not entitled to summary judgment on its pleadings simply denying the allegations of the complaint, but must rely on one or more of its affirmative defenses. For convenience, let us consider the three affirmative defenses in reverse order.

"Affirmative Defense No. 3.

"Any act of the messenger in making the alleged statement to the Hotel Clerk was wholly unauthorized, without the scope of his employment, and hence not binding on the defendant."

Looking at the case in the light most favorable to the plaintiff, we cannot agree with the opinion of the district court that, "When the clerk of her hotel, who was not an agent of the defendant, telephoned her that he was sending up a death message, it was wholly gratuitous, so far as the defendant is concerned, and the defendant is not, and, was not bound by what the hotel clerk said."

To the contrary, the complaint alleged that the defendant transmitted the message as a "death message" and advised its messenger that it was a death message.

Construing the complaint most favorably to the plaintiff, the messenger was acting within the scope of his employment when he handed the message to the clerk of the hotel, saying at the time, "Here is a death message"; it was reasonably to be anticipated that the hotel clerk would relay such information to the plaintiff; and, hence, the defendant was responsible for such conduct on the part of the hotel clerk.

"Affirmative Defense No. 2.

"Plaintiff's alleged mental anguish and physical suffering were based solely on wholly unwarranted mistaken beliefs or apprehensions or fears as to conditions which were wholly imaginary and hence damages therefor are not recoverable."

The message itself charged the defendant with notice that the addressee might be expecting the sender, "Janice", to arrive home by plane. The trier of facts could reasonably conclude that to misinform the addressee that she was receiving a death message would naturally be expected to result in extreme mental anguish and consequent physical injury. On this defense, defendant was not entitled to summary judgment.

The really serious and important question to be decided on this appeal is presented by affirmative defense No. 1.

"Affirmative Defense No. 1.

"The telegram shows on its face to be an interstate telegram and by reason of such fact mental anguish unaccompanied by actual physical hurt is not recognized in the United States Courts, the alleged physical injuries having sprung from a purely mental condition."

On June 18, 1910, Congress amended the Interstate Commerce Act, 36 Stat. 539, 545, so as to place interstate telegraphic communication under

the jurisdiction of the Interstate Commerce Commission. Such jurisdiction was transferred to the Federal Communications Commission with the enactment of the Communications Act of 1934, 47 U.S.C.A. § 151 et seq. Ever since federal control was thus established, telegraph companies, as to interstate transactions, have been subject to a national and uniform rule of law. Postal Telegraph-Cable Co. v. Warren-Godwin Lumber Co., 251 U.S. 27, 40 S.Ct. 69, 64 L.Ed. 118; Western Union Telegraph Co. v. Boegli, 251 U.S. 315, 40 S.Ct. 167, 64 L.Ed. 281; Western Union Telegraph Co. v. Speight, 254 U.S. 17, 41 S.Ct. 11, 65 L.Ed. 104; 52 Am.Jur., Telegraphs and Telephones, Sec. 142.[2] Notwithstanding Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, interstate message transactions are still governed by federal law to the exclusion of conflicting state law; and that means that they are governed not merely by the provisions of the federal statutes, but by " 'federal common law' " as well. O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539, 541; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165; Moore's Commentaries on the U. S. Judicial Code, Sec. 0.03(45), p. 340 et seq.

The subject is not mentioned in the federal acts, but the decisions of the Supreme Court have settled the doctrine that in actions governed by federal law a suit cannot be maintained for mental suffering alone. Southern Express Co. v. Byers, 240 U.S. 612, 36 S.Ct. 410, 60 L.Ed. 825; Western Union Telegraph Co. v. Speight, 254 U.S. 17, 41 S.Ct. 11, 65 L.Ed. 104. Appellant urges upon us that modern developments in the medical and legal fields have rendered those decisions obsolete.

No doubt the law as to liability for mental anguish alone is in a stage of development. In the 1948 Supplement to the A.L.I., Restatement of the Law, a new Section 46 was substituted for original Section 46 of the Restatement of Torts, the new section reading as follows:

"§ 46. Conduct Intended To Cause Emotional Distress Only.

"One who, without a privilege to do so, intentionally causes severe emotional distress to another is liable

"(a) for such emotional distress, and

"(b) for bodily harm resulting from it."

The caveats, comments thereon and statements of reasons for the change are illuminating, and in turn refer to many authorities and tests.[3] American Jurisprudence also comments that:

"Some learned text writers are of the opinion that legal protection to the interest in mental and emotional

2. On the other hand, it is well settled as stated in Huff v. Louisville & Nashville R. Co., 5 Cir., 198 F.2d 347, 348, that:

"In the absence of regulation by Congress, the liability of a common carrier to an interstate passenger is to be determined in accordance with the law of the state where the injury occurs. 10 Am. Jur., Carriers, Sec. 1111; Atlantic Coast Line R. Co. v. Mitchell, 5 Cir., 157 F. 2d 880; Atlantic Greyhound Corp. v. McDonald, 4 Cir., 125 F.2d 849; Tobin v. Pennsylvania R. Co., 69 App.D.C. 262, 100 F.2d 435; Wells v. Missouri Pac. R. Co., 8 Cir., 87 F.2d 579; American Law Institute Restatement of Conflict of Laws, Secs. 378 and 379."

3. "First Caveat: The Institute expresses no opinion as to whether one who reck-lessly causes severe emotional distress to another is or is not liable for it.

"Second Caveat: The Institute expresses no opinion as to whether one who negligently causes severe emotional distress is, in certain circumstances, liable for it.

"Comment to Caveats:

"The law concerning the extent of the legal protection given to the interest in freedom from emotional distress is still developing. There is not yet a sufficient body of decisions to formulate general rules concerning unintentional invasions of this interest. For that reason the Institute takes no position except with respect to intentional invasions and the situations involved in § 47.

\*        \*        \*        \*        \*

tranquillity is in an intermediate stage of development.[3] * * *

"[3] See Magruder, Calvert, 'Mental and Emotional Disturbance in the Law of Torts,' 49 Harvard L.Rev. p. 1058.

"See also Goodrich, Herbert F.; 'Emotional Disturbance as Legal Damage,' 20 Mich.L.Rev. pp. 510, 513, declaring: 'It now only remains to break loose from the arbitrary rule requiring such protection to be coupled with some other claim before affording redress. This step, it is submitted, we may see taken any time. That is the way the common law grows.' "

52 Am.Jur., Torts, § 46, p. 391. We are nevertheless constrained to hold that, if the decisions of the Supreme Court are to be overruled as obsolete, such ruling must come from that Court alone.

In each of these Supreme Court cases, however, the claim was for mental suffering only, and the Court was somewhat emphatic in limiting its ruling to such a claim. See 240 U.S. at page 615, 36 S.Ct. at page 411; 254 U.S. at page 18, 41 S. Ct. 11. Here, the complaint charges that the plaintiff was rendered violently ill, that she went into a state of shock, that her condition of high blood pressure was aggravated, that she was caused to become weak and debilitated, that serious and lasting injuries ensued to her ability to stand and to move about, that it was necessary for her to receive immediate medical attention, and that she has remained under the care of a doctor ever since.

The Supreme Court has not yet ruled that there can be no recovery for physical injuries resulting from emotional distress wrongfully or negligently caused; and we have been cited to no decision of a Federal Court of Appeals so holding. We observe that the Tenth Circuit, in commenting upon the law of the State of Oklahoma, used the following expression:

"The courts generally draw a line between the purely physiological

---

"*Reason for Change:* This is a part of the law of torts in which real developments have occurred in recent years and this development is continuing. The cases which have appeared since 1934 establish that the interest in freedom from severe emotional distress is protected against intentional invasion. Among the more recent cases are: Melvin v. Reid, 1931, 112 Cal.App. 285, 297 P. 91; Mau v. Rio Grande Oil Co., D.C.1939, 28 F. Supp. 845; Interstate Life, etc., Co. v. Brewer, 1937, 56 Ga.App. 599, 193 S.E. 458; Barnett v. Collection Service Co., 1932, 214 Iowa 1303, 242 N.W. 25; Blakeley v. Shortal's Estate, 1945, 236 Iowa 787, 20 N.W.2d 28; Klumbach v. Silver Mount Cemetery Ass'n, 1934, 242 App.Div. 843, 275 N.Y.S. 180; Id., 1935, 268 N.Y. 525, 198 N.E. 386; La Salle Extension University v. Fogarty, 1934, 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491; Kirby v. Jules Chain Stores Corporation, 1936, 210 N.C. 808, 188 S.E. 625. The cases are fully reviewed in the recent literature which contains extensive citations of authorities. See Goodrich 'Emotional Disturbance as Legal Damage' (1922) 20 Michigan Law Review 497; Magruder 'Mental and Emotional Disturbance in the Law of Torts' (1936) 49 Harvard Law Review 1033; Prosser 'Intentional Infliction of Mental Suffering: A New Tort' (1939) 37 Michigan Law Review 874. Eldredge 'Tort Liability for Mental Distress,' printed in Modern Tort Problems (1941) pages 71–102, and Smith 'Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli' (1944) 30 Virginia Law Review 194. The latter article by Dr. Hubert Winston Smith, L.L.B., M.D., is an exhaustive discussion of the cases from both a medical and a legal point of view, and he states at page 229: 'Assume there is no impact or injury inflicted from without, but A *wilfully* or *maliciously* causes B to suffer mental anguish. Courts are agreed that B may recover damages for this intentional tort even though it causes him no physical injury or disability, but only an oppressive and undesirable disturbance of mental tranquillity.'

"The change in Section 46 is necessary in order to give an accurate Restatement of the present American law. There is a definite trend today in the United States to give an increasing amount of protection to the interest in freedom from emotional distress."

and the psychological, the corporeal and the psychical. Emden v. Vitz, 88 Cal.App.2d 313, 198 P.2d 696; Kelly v. Lowney & Williams [Inc.], 113 Mont. 385, 126 P.2d 486; Cherry v. General Petroleum Corp., 172 Wash. 688, 21 P.2d 520; Maynard v. Oregon R. Co., 43 Or. 63, 72 P. 590. And, the majority of the courts compensate for bodily injuries produced by or resulting from mental disturbances, although unaccompanied by any physical impact or concussion. In such cases, the right to recover is dependent upon the nature of the results rather than the nature of the tortious conduct. Emden v. Vitz, 88 Cal.App.2d 313, 198 P.2d 696 and cases cited therein; Taylor v. Pole, 16 Cal.2d 668, 107 P.2d 614; Frazee v. Western Dairy [Products], 182 Wash. 578, 47 P.2d 1037; 52 Amer. Jur. Torts, Sections 45 and 55." Belt v. St. Louis-San Francisco Ry. Co., 195 F.2d 241, 243.

The Sixth Circuit in Baltimore & O. R. Co. v. McBride, 36 F.2d 841, 842, had the following to say:

"Nor was there any ground for application of the doctrine that damage from nervous shock unattended by physical injury is considered too remote to support recovery. Cf. Miller v. [Baltimore & O. S. W.] R. Co., 78 Ohio St. 309, 85 N.E. 499, 18 L.R.A.,N.S., 949, 125 Am.St. Rep. 699. Where both the physical injury and the nervous shock are proximately caused by the same act of negligence, there is no necessity that the shock result exclusively from the physical injury. Each forms a part of the natural and indivisible result, and the fact that the plaintiff has suffered physical injury as part of the aggregate of the attending results precludes assertion of the defense that the connection between the negligent cause and the resulting nervous shock is too remote for legal contemplation."

On the other hand, as pointed out in the opinion of the District Court, 124 F.Supp. at page 147, a number of Federal District Courts have ruled that physical injuries following emotional distress afford no ground for recovery. See Tyler v. Western Union Telegraph Co., C.C.W.D.Va., 54 F. 634; Jones v. Western Union Telegraph Co., D.C.S.D. Cal., 233 F. 301; Ey v. Western Union Telegraph & Cable Co., D.C.N.D.Cal., 298 F. 357; Mees v. Western Union Telegraph Co., D.C.S.D.Fla., 55 F.2d 691.

American Jurisprudence states that, "In respect of the right to maintain an action for a bodily injury or illness resulting from a mental or emotional disturbance, the authorities are in a state of dissension probably unequaled in the law of torts." 52 Am.Jur., Torts, Sec. 55, p. 399. A note to the text calls attention that:

"*In England,* the later cases support the right to maintain an action for a bodily injury or illness resulting from a mental disturbance, notwithstanding the contrary rule supported in Victorian R. Comrs. v. Coultas (1888) LR 13 App.Cas. 222, 8 Eng.Rul Cas 405—PC, the case chiefly relied upon in the United States by courts supporting the rule denying recovery. Anno: 11 A.L.R. 1134, s.40 A.L.R. 985, 76 A.L.R. 684, and 98 A.L.R. 403; 12 Ann.Cas. 744. See also Janvier v. Sweeney [1919] 2 KB(Eng) 316, 9 BRC 579—CA." 52 Am.Jur., supra, at p. 400.

In Sections 50 to 54 of the same text, the various reasons assigned by the courts for the denial of the right to maintain an action predicated upon a mental or emotional disturbance alone are considered and discussed, such as the difficulty of proof, the difficulty of measuring the loss, the ordinary triviality of harm, the multiplication of litigation and inharmonious results. The distinction between the rationale of that doctrine and cases where bodily injury or illness ensue is

well summarized in 52 Am.Jur., Torts, Sec. 59, p. 406:

> "This distinction is based upon the ground that in an action for a bodily injury or illness resulting from a mental or emotional disturbance, the basis for the action is the bodily injury or illness, an interest always afforded protection by law, while the mental or emotional disturbance, an interest not generally afforded independent protection by law, is merely a link in the chain of causation."

See, also, the series of notes in 11 A.L.R. 1119; 40 A.L.R. 983; 76 A.L.R. 682; and 98 A.L.R. 402.

Enough has been said to indicate that the literature on the subject is voluminous, if not exhaustive. The extremely valuable and thorough article of Dr. Hubert Winston Smith on Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli begins in 30 Va.Law Review at p. 193 and concludes on p. 317. For ourselves, we can see no more reason for denying recovery where physical injury follows mental anguish than in those cases ordinarily encountered where mental anguish follows physical injury. The injustice of denying legal redress to a person wrongfully and seriously injured as alleged in the present complaint outweighs in our minds the policy considerations which some courts have held to prevent a recovery in such cases. Accordingly, feeling that we are not bound by any controlling decisions of the United States Supreme Court, and that our decision is in line with the views of the Tenth Circuit expressed in Belt v. St. Louis-San Francisco Ry. Co., supra, and the views of the Sixth Circuit in Baltimore & O. R. Co. v. McBride, supra, we hold that the complaint states a claim upon which recovery may be had for the physical injury and illness resulting from the mental or emotional disturbance, and, hence, that it was error to enter summary judgment for the defendant.

The judgment is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DE VANE, District Judge.

I dissent.

Rehearing denied: DE VANE, dissenting.