George T. WOOD; Lane Remy Wood, a minor, by his next friend and father, George T. Wood; and Robert George Wood, Appellants,

v.

UNITED AIR LINES, INC., a Delaware corporation, Appellee.

No. 9999.

United States Court of Appeals Tenth Circuit.

Nov. 26, 1968.

John W. Burk, Casper, Wyo. (Mayne W. Miller, Casper, Wyo., and Walter C. Urbigkit, Jr., Cheyenne, Wyo., on brief) for appellants.

Bard Ferrall, Cheyenne, Wyo., for appellee.

Before LEWIS, SETH and HICKEY, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

On November 11, 1965, a United Air Lines commercial plane with 85 passengers aboard crashed and burned while in the process of landing at Salt Lake City, Utah. Appellants are the surviving husband and children of Betty Smith Wood, one of the 43 passengers who died in the accident. This action was initiated in the District Court for the District of Wyoming under diversity jurisdiction and by complaint setting forth five separate claims for damages against the airline. Appellants obtained a substantial recovery upon those claims pertaining to the wrongful death of Mrs. Wood and that aspect of the case is not involved on appeal. The remaining three claims purport to present actionable wrongs imposing liability upon defendant for acts done corollary to and subsequent to the accident and death of Mrs. Wood. Each such claim is premised and developed from the undisputed fact that United had aboard its flight one more adult person than its passenger manifest indicated. Mrs. Wood was that person. After the parties completed discovery procedures to their satisfaction, the trial court dismissed these causes in an

order which in substance was the equivalent of granting summary judgment adverse to appellants. This appeal followed. The three causes, as pleaded, are as follows:

## THIRD CLAIM

Plaintiffs adopt and incorporate herein by this reference all the allegations and averments of paragraphs one through 13 of the First Claim.

1. Following the burning of said aircraft and the death of Betty Smith Wood, and for a period of more than twenty-four hours after such death, the Defendant, United Airlines, Inc., its agents, servants and employees, falsely and deliberately maintained to Plaintiffs that Betty Smith Wood had not been aboard the said aircraft and was therefore unharmed in the disaster. Defendant refused to permit any member of the family to view the remains of Betty Smith Wood for the purpose of making identification and repeatedly insisted to members of the family throughout the day following the tragic accident that Betty Smith Wood was not aboard the aircraft, and told Plaintiff George T. Wood that he should seek the whereabouts of the deceased by contacting a missing persons bureau.

2. Such actions of the Defendant constituted gross, wilful and wanton misconduct, and conscious indifference to the consequences of its acts and the rights of Plaintiffs and that such conduct proximately caused Plaintiffs the greatest pain of mind and body to their damage in the sum of $100,000.

## FOURTH CLAIM

1. Plaintiffs adopt and incorporate herein by reference all the allegations of paragraphs one through thirteen of the First Claim.

2. Defendant had a duty to plaintiffs to know whether the deceased Betty Wood was on board the crashed airliner and to inform plaintiffs upon their inquiry within a reasonable time after the accident that said decedent was aboard, but defendant negligently failed to learn the true facts or else upon learning them negligently failed to inform plaintiffs who began inquiring immediately after the accident and continued to for a period of many hours. Plaintiffs allege that the failure of defendant to inform them that decedent was aboard the aircraft and had died in the resulting fire within a reasonable time after inquiry made caused each of them increased mental anguish and suffering, additional expense to learn the facts, and constituted actionable negligence to their damage in the sum of $100,000.00.

## FIFTH CLAIM

1. Plaintiffs adopt and incorporate herein by reference all the allegations of paragraphs one through thirteen of the First Claim.

2. Plaintiffs allege that following the accident defendant had possession of the dead body of decedent and that defendant continued to exercise control over the decedent's body until the time that said body was formally identified at the Deseret Mortuary in Salt Lake City through the recognition of certain items of jewelry worn by decedent at the time of her death. This identification was made at approximately 9 o'clock P.M. on November 12 or some 27 hours following the accident. Plaintiffs allege that the failure of defendant during the intervening time from the accident until the time of such identification to identify the said body to plaintiffs and to offer to turn over the body to plaintiffs constituted a tortious interference with plaintiff's [sic] rights to the body of decedent, causing plaintiffs increased and undue mental anguish and suffering and that such misconduct on the part of defendant is actionable negligence to plaintiffs' damage in the sum of $100,000.00.

The trial court did not dismiss these claims as not actionable on their face but

did so in view of facts considered to be both determined and undisputed as exposed by discovery procedures. Our review is premised accordingly.[1]

Appellants' Fifth Claim is based upon an alleged tortious interference by United with appellants' right to the body of the decedent as therein alleged. The trial court properly ruled that this claim was negatived in both fact and law. It is undisputed that the Civil Aeronautics Board investigated the accident pursuant to the Board's rights and duties under 49 U.S.C. § 1441; that United did nothing relative to the bodies of those persons killed in the crash, including the actual removal of the bodies from the plane, without first obtaining specific permission from C.A.B. authority. No claim is made that United acted in any way contrary to its limited authority and it thus follows as a matter of law that appellants' Fifth Claim is not actionable.

Appellants' Fourth Claim is presented as a self-evident proposition that arises from the duty of the airline to carry passengers with that degree of care required by law from common carriers. The argument seems self-denying because the airline's duty in such regard was totally breached by Mrs. Wood's death and this claim is dependent upon subsequent events. The claim is also bottomed on an assertion of a duty existent for the carrier to know the identity of its passengers and to inform appellants within a reasonable time that Mrs. Wood had died in the fire. No statute, regulation, or rule of common law imposes a duty upon a carrier to know the identity of its passengers and, again, discovery procedures established that post-death identification was conducted under the direction of the Civil Aeronautics Board. The trial court properly summarily denied this claim.

The Third Claim attempts to impose liability upon United for emotional distress of mind and body occasioned ap-

pellants through statements made by United to members of the Wood family and presumably communicated to appellants during the hectic period when appellants sought information concerning the fate of Mrs. Wood. We cannot negative such a claim as unknown to the law although "damages for mental pain and suffering, where there has been no physical injury, are allowed only in extreme cases." United States v. Hatahley, 10 Cir., 257 F.2d 920, 925, 79 A.L.R.2d 668. A generality pertaining to the rule is set forth in Restatement of Torts, 2d, § 46, thus:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other result from it, for such bodily harm."

Against an entirely different factual background the Utah Supreme Court has recognized and applied the substance of the rule stating:

"Our study of the authorities, and of the arguments advanced, convinces us that, conceding such a cause of action may not be based upon mere negligence, the best considered view recognizes an action for severe emotional distress, though not accompanied by bodily impact or physical injury, where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality. This test seems to be a more realistic safeguard against false claims than to insist upon finding some other attendant tort, which may be of minor character, or fictional." Samms v.

---

1. The parties have not cited, nor has the court found, a single reported case that has any factual similarity to the case at bar.

Eccles, 11 Utah 2d 289, 358 P.2d 344, 346–347.

We have no doubt that recovery to appellants would not be allowable from simple proof of the allegations as set forth in Claim Three. United's repeated response to members of the Wood family that Mrs. Wood was *not* on board the airline did not amount to outrageous conduct. The statement was in error,[2] and false and deliberate only in that sense. In fact, a reckless error made conversely, that Mrs. Wood *was* on board when she was not, might well have been actionable. See Kaufman v. Western Union Tel. Co., 5 Cir., 224 F.2d 723. Nor does the suggestion, as pleaded, that appellants contact a missing persons bureau allege conduct outrageous in fact or law when considered in isolation. However, as with our determination of the Fourth and Fifth claims, we must again give consideration to the complete discovery record to review the trial court's summary disposition of this aspect of the case.

As will be noted by excerpts from affidavits[3] filed in opposition to appellee's motion for summary disposition of Claim Three, employees of United are asserted to have suggested that it was possible that Mrs. Wood might have purposely missed her Denver flight connection on her Cheyenne-Salt Lake trip for personal reasons. The nature of this suggestion under some circumstances clearly would not be outrageous conduct;[4] under other and aggravated circumstances the potential of a cause of action exists under Utah law. Such is the holding of Samms v. Eccles, supra. The record now before us, which as we have stated is limited to that of discovery, simply does not disclose the total circumstantial and factual background existent and against which the statements attributed to United must be projected. The who, when, and why of this aspect of the case are not developed and thus not undisputed and it follows that summary disposition of the claim was premature.

2. The statement, as disclosed by interrogatories, was based on the manifest which was the only initial information United had on the subject.

3. "I was directed to the United chief at the scene * * *, he represented himself to be United's senior spokesman at that location. He was very pleasant to me. I explained to him I was there on behalf of the Wood family to learn about the fate of Betty Smith Wood. He told me United had no knowledge of her being on the plane and that she was not on the passenger list. I asked him if it was possible for her to be on board without United's knowledge. He said there was a small possibility of this but it wasn't probable. He said she might not have got on in Denver, might have met with foul play there, or could have met a man there to go somewhere with him. I told him this wasn't possible, she wasn't that kind of woman and besides she was a member of a very close family and was coming here to the funeral of her brother. He told me to check with the police and Missing Persons Bureau at Denver."

"* * * Shortly after we arrived home we heard a United Airline plane had crashed, and having just returned from the Smith home knew Betty was to arrive on this plane. I immediately telephoned United Airlines and was told Betty's name was not on the passenger list. I explained to this United Airline personel [sic] Betty was due in on this plane and he suggested she perhaps had met some one in Denver and gone with him by prearrangement. I told him Betty was not this kind of a person and that she was coming to Salt Lake City to be with her Mother and other relatives and to attend the funeral of her brother. * * *"

"* * * Even though I explicitly explained to this United Airline official I had this information from firemen at the scene, he argued with me that 40 bodies had been taken from the plane and that there was not an extra body. He insisted that Betty had not got on at Denver, was not aboard the crashed aircraft, and again United inferred she must have gone elsewhere with some one at Denver."

4. An example, perhaps, would be police authority investigating a missing persons complaint.

The judgment of the trial court is affirmed as it pertains to Claims Four and Five; the judgment is reversed as to Claim Three and the case remanded for further and appropriate proceedings. No costs are awarded.